## The Louisville, New Albany and Chicago Railway Company.

*v.*

### Jennie E. Carson *et al.*

*Filed at Ottawa, June 19, 1894.*

1. CORPORATION—*contract through one of its officers with himself.* A lease made by a railway company, through one of its directors, on the one part, with himself and another, the owners of the demised premises, on the other part, is not void so as to be incapable of ratification.

2. A lease for five years was executed by A. and B., the owners of the property in their own proper names, to a railway company, which executed the same by A., its vice-president and general manager, and the company took and retained possession of the premises for three years, and paid rent: *Held,* that the lease was not void, but at the most only voidable.

3. Where the president and directors of a railway company authorize its vice-president to make a lease of land of which he is part owner, and after its execution, the leasing of the premises is approved and ratified by the president and directors of the company, and there is no fraud, the lease will be valid.

4. SAME—*ratification of act done—how shown.* A ratification of the act of an officer of a corporation in making a contract may be implied by the acts of the corporation, as well as expressed by its vote. The acts and assent of corporations, like those of individuals, may be shown and inferred from facts and circumstances.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. RICHARD TUTHILL, Judge, presiding.

Messrs G. W. & J. T. KRETZINGER, for the appellants :

Carson, as an officer of the railway company, entered into a contract for the leasing of premises owned by him, and, therefore, the lease executed by him to himself in part is void. *President, etc.,* v. *Ry. Co.,* 44 Cal. 106; *Pickett* v. *School*

*District,* 25 Wis. 552; *Cumberland Coal Co.* v. *Sherman,* 30 Barb. 553; *Port* v. *Russell,* 36 Ind. 64; *Railway Co.* v. *Poor,* 59 Me. 277; *Hardner* v. *Butler,* 30 N. J. 702; *Insurance Co.* v. *Insurance Co.,* 17 Barb. 132; *Davis* v. *Railway Co.,* 55 Cal. 359; *Copeland* v. *Manufacturing Co.,* 54 N. Y. 235; *Thomas* v. *Railway Co.,* 1 McCrary, 392.

The lease being void can not be made the subject of ratification. *Thomas* v. *Railway Co.,* 1 McCrary, 392; *Scovill* v. *Thayer,* 105 U. S. 143; *Railway Co.* v. *Railway Co.,* 118 id. 290.

Messrs. Parker & Higgins, for the appellee:

A lease made by a corporation through an officer thereof on the one part, with himself on the other part, is not absolutely void; it is at most only voidable. 1 Morawetz on Corporations, 527; *Bundy* v. *Jackson,* 24 Fed. Rep. 628; *Bank* v. *Patterson,* 7 Cranch, 299; *Canal Bridge* v. *Gordon,* 18 Mass. 296; 1 Spelling on Corporations, secs. 197, 198; 2 Pomeroy's Eq. Jur., sec. 1077; *Duncomb* v. *Railway Co.,* 84 N. Y. 190; *Hotel Co.* v. *Wade,* 97 U. S. 14; *Harts* v. *Brown,* 77 Ill. 226.

Such a lease is valid, if the officer be directed by the board of directors to execute the same. 1 Morawetz on Corporations, sec. 527; 1 Beach on Corporations, 402; *Bartell* v. *N. W. Clement Co.,* 37 Minn. 89; *Knowles* v. *Duffy,* 40 Hun, 485; *Santa Cruz Co.* v. *Spreckles,* 65 Cal. 193; *Hill* v. *Nesbit,* 100 Md. 341; *Pneumatic Gas Co.* v. *Berry,* 113 U. S. 522; *Washburn* v. *Green,* 133 id. 30; *Kelsey* v. *Bank,* 69 Pa. St. 426; *Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 68; *Smith* v. *Smith,* 62 id. 493; *Addison* v. *Lewis,* 75 Va. 701; *Stratton* v. *Allen,* 16 N. J. Eq. 229.

President is presumed to have authority to bind the corporation within the powers of the charter. *Crowley* v. *Mining Co.,* 55 Cal. 273; *Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 68.

Same presumption as to vice-president. *Smith* v. *Smith*, 62 Ill. 493.

That the lease made by the corporation through John B. Carson, its vice-president, with himself and Andrew J. Cooper, if voidable in the first instance, was capable of being made valid by the ratification thereof by the corporation, see : *Dubuque College* v. *Dubuque*, 13 Ia., pp. 555–560; Vol. 17, Ency. of Law, p. 162; Beach on Corp., sec. 195; *Oregon Ry.* v. *Oregon Ry. & Nav. Co.*, 28 Fed. 505; *Planters' Bank* v. *Sharp*, 4 Smed. & M. (Miss.), 75; *Greenleaf* v. *Norfolk Southern Ry.*, 91 N. Ca. 33; *First Nat. Bank* v. *Fitch*, 75 Mo. 178; *Kelsey* v. *Nat. Bank*, 69 Pa. St. 426; *Eureka* v. *Barley Co.*, 11 Wall. 491; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S. 644; *Will* v. *Moyer*, 5 Rob., N. Y., 259; *Esp. C. Soc.* v. *Esp. Church*, 1 Pick., 375 (Mass.); *Pac. Rolling Mill Co.* v. *Dayton Ry.*, 7 Sawyer, 67, also 5 Fed. Rep; Beach on Corp., vol. 1, sec. 194; *Walworth Co. Bank* v. *Farmers Loan & T. Co.*, 16 Wis. 629.

That ratification, where the principal could contract in the first instance, is equivalent to original leasing through a competent board of directors, or other competent authority, see: Story on Agency, 239–252; *Connett* v. *City of Chicago*, 114 Ill., 233; Abbott on Trial Ev., 441–3; Bishop on Contracts, 330; *Wood* v. *Whelen*, 93 Ill. 153.

Ratification may be shown by circumstances and acts. *Am. Ins. Co.* v. *Oakley*, 9 Paige Ch., 496; *N. Y. & A. Ry.* v. *Mayor, etc.*, 1 Hilton, 587; Vol. 17, Ency. of Law, 164; note 2, and cases cited; *Howe* v. *Keeler*, 27 Conn., 538.

If the benefit of the contract is accepted by the corporation, it is bound thereby. *Kirkland* v. *Merasha Co.*, 68 Wis. 34; *Paxton Cattle Co.* v. *First Nat'l Bank*, 21 Neb. 621; *Holmes* v. *Kansas City Board of Trade*, 81 Mo. 137: *Paulding* v. *London Ry.*, 8 Exch. 867; *Beverly* v. *Linco Gas Co.*, 6 Adol. & Ellis, 829; *Tuscaloosa & C. Co.* v. *Perry*, 85 Ala. 158; *Mellidge* v. *Boston Ins. Co.*, 5 Cush

158–175; *Smith* v. *Martin Arc. Fire Car Heater Co.*, 19 N. Y. Sup. 285.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by John B. Carson, Van H. Higgins, and Henry J. Furber, against the Louisville, New Albany & Chicago Railway Company, to recover rent alleged to be due on a lease executed April 25, 1887, by Carson and Cooper to the railway company, under which the lessors leased to the lessees certain rooms in a building known as the Adams Express Building, in Chicago, from the 1st day of May, 1887, for a term of five years, for the sum of $35,000, payable in monthly installments of $583.33. The lease was signed by Cooper and Carson, in their own proper names, as parties of the first part, and by the Louisville, New Albany & Chicago Railway Company, by John B. Carson, vice-president and general manager, as party of the second part. John B. Carson, one of the lessors, was the same person who executed the lease on behalf of the railway company as vice-president and general manager; he was also at the time a director of the railway company. Upon the execution of the lease the railway company took possession of the demised premises and occupied the same until May 1, 1890, a period of three years, when it vacated the premises, moved to the Monon Block, and after that date refused to pay rent to the lessors. In the Circuit Court the cause was tried without a jury, and judgment rendered in favor of plaintiff for the full amount claimed under the lease. The judgment, on appeal, was affirmed in the Appellate Court.

We have been favored by counsel for the railway company with an able oral argument, and also an elaborate printed brief, in which it is claimed that the lease is void, and no recovery can be had, for the reason that the lease was executed by John B. Carson, as vice-president and general manager of the railway company, with himself as owner of

the premises.   The record discloses no unfairness or fraud
on the part of Carson in making the lease; on the other
hand, it was made with the approval of the president and
directors of the company.   It appears that the railway com-
pany removed its headquarters to Chicago in 1884, and
leased rooms on the fifth floor of the Adams Express Build-
ing, and occupied those rooms until the spring of 1887,
when, as appears from the uncontradicted testimony of Car-
son, he was directed to procure and fit up for the use of the
company the demised premises.   Carson, upon this point, tes-
tified to needing more rooms, and after consultation with the
president of the company, and Mr. Astor, Mr. Hitt, and
Mr. Ehrhardt, who were directors of the company, he was
instructed to finish and partition off the ninth floor, being
the premises covered by the lease in question, of the same
building, for the uses of the company—said ninth floor be-
ing then in an unfinished condition; and that, in properly
preparing said floor, the owners of the building expended
from fifteen to twenty thousand dollars; that after its
completion the same gentlemen visited and went over the
offices and approved of everything he had done; that as
soon as the premises were ready for occupancy the company
moved into them, and occupied the same for three years, or
a little over, with full knowledge and approval of every
member of the board of directors.

Elihu Root, one of the directors, testified that he knew
the railway company leased certain rooms in the Adams
Express Building.   As to the knowledge of the witness of
the execution of the lease, he testified: "Carson executed
the lease on behalf of the company, as vice-president, but
I am not able to state whether I acquired that knowledge
at the time the lease was executed or otherwise.   I knew
beforehand that the lease was to be made, and the terms
upon which it was to be made, and when it was made,
I knew that it had been done.   *   *   *   *   I do
not remember whether the directors took any formal action

by way of approving the lease, except that I know it was authorized by the president, and well understood by the members of the board.''

It also appears from the testimony of this witness that Dowd, the president of the company, before the lease was made, told him of his intention to make the lease, and that it was a matter of common notoriety that Carson was one of the owners of the building. But as the questions of fact are not involved here, it is not necessary to refer to the testimony of the different witnesses.· It is sufficient to state that the evidence tends to prove, and the Appellate Court found, that Carson was authorized by the president and directors to make the lease, and after the execution of the lease the leasing of the premises was approved and ratified by the president and directors of the company. If, as testified by the director Root, the making of the lease was authorized by the president, and well understood by the members of the board, can it be held void on the ground alone that Carson, who made the lease by the direction of the president, was one of the owners of the demised premises?

In Morawetz on Corporations, sec. 527, the author says: ''There is no necessary impropriety in a contract between a director and the corporation, if the latter is represented by other agents. On the contrary, such contracts are, in many instances, the natural result of circumstances, and are justified by the approved usages of business men.''

It is also said: ''An agent may even represent the corporation in making a contract with himself personally, provided he act under immediate instructions from such other superior agent or from the board of directors.''

Here, as has been found by the Appellate Court, Carson, in making the lease, was acting under the instructions of the president and directors of the railway company. The lease was not his act as agent of the railway company, but

it was the act of his superior, the president of the corporation, and hence he can not be regarded as dealing with himself. Had Carson gone on and made a lease without any instructions or directions from the president or directors of the corporation, the invalidity of the contract might be relied upon, upon the ground that there were not two contracting parties; but such was not the case. Moreover, a contract like the one in question is not void *ab initio*, it may be voidable, but we do not regard it as absolutely void.

If the contract was merely voidable, it could be ratified by the corporation, and, if ratified, it would then be binding. Was the contract ratified by the railway company? A reference to the undisputed facts would seem to leave no room for doubt on this question. Upon the execution of the lease, thé railway company went into possession of the premises, and occupied the same for over three years, paying rent monthly as the installments became due by the terms of the lease. The lease executed by Carson, as vice-president and general manager for the railway company, and by Carson and Cooper as lessors, was in the possession of the treasurer of the corporation all the time the premises were occupied. The fact of the location of the offices of the company in the Adams Express Building, was published each year in the annual report of the company to the stockholders. No action was taken, during the three years the premises were occupied, by the board of directors or any of the officers of the company to repudiate the lease, or call in question its validity. The lease, and all of its terms and conditions were fully known to the president of the corporation and its board of directors. The premises were fitted up to meet the wishes and convenience of the officers of the company, at a large expense. These facts and circumstances may be regarded as ample proof of ratification on behalf of the railway company. *Kelly* v. *Newburyport, etc., Ry. Co.*, 141 Mass. 496.

A resolution of the board of directors was not required to ratify the contract. A ratification of the act of a corporation in making a contract may be implied by the acts of the corporation as well as expressed by its vote. *Howe* v. *Keeler*, 27 Conn. 538.

The acts and assent of corporations, like those of individuals, may be shown and inferred from facts and circumstances. *American Ins. Co.* v. *Oakley*, 9 Paige, 496. The lease in question was one the railway company, by order of its board of directors, had full authority to make; it was necessary to provide offices for the officers of the company, where the business of the company could be properly transacted. Indeed, it is not claimed in the argument that the officers of the railway company had no authority to lease offices for the use of the company, but the only claim interposed to defeat the lease is that Carson, as vice-president and general manager, could not lease property in which he had an interest as owner,—that his act was void. We do not concur in that view.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*