### Howard Greer v. Morris Sellers et al.

1. Corporations—*Contracts Between Stockholders.*—A proposition by a part of the stockholders of a corporation as to the sale by them of the property of the corporation to the other stockholders and accepted by them, constitutes a valid contract.

2. Specific Performance—*Contracts Relating to Personal Property.* —A contract between the stockholders of a corporation relating to the sale of the personal property of such corporation, embracing letters patent, which gave to such property substantially all the value it possesses, will be enforced in equity by a decree for specific performance.

3. Damages—*When Recoverable in Equity.*—A contract which may be specifically enforced, if by reason of events occurring subsequent to the filing of the bill, a specific performance can not be decreed, equity, having jurisdiction, will proceed and award such damages for non-performance as might under other circumstances be recoverable at law.

4. Estoppel—*Where it Does Not Apply.*—Where two persons owned all of the stock of a corporation, the property of which was made valuable by certain patent rights, also belonging to the corporation, and one of them being the president, under an agreement assigned the patents to the other, *it was held* there could be no one but the other to complain, and he would be estopped from complaining by having contracted to accept them.

5. Ratification—*By Corporation.*—Ratification is as susceptible of being made by a corporation as by an individual, and it is not always necessary that either the board of directors, as such, or that the stockholders specially convened, should expressly act upon the subject-matter needing ratification.

6. Same—*By Acquiescence.*—There may be ratification by acquiescence and general conduct, under a knowledge of all the facts, as well as by express action. Corporations, like individuals, may be bound by a ratification evidenced by its acts, and such ratification need not be in writing even though it be a ratification of an act done without authority.

**Bill for Specific Performance.**—Appeal from the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding. Heard in this court at the March term, 1896. Reversed and remanded, with directions. Opinion filed June 1, 1896.

JONES & STRONG, attorneys for appellant.

LOESCH BROTHERS & HOWELL, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The Superior Court dismissed for want of equity a bill filed by appellant against the appellees to enforce specific performance of an alleged contract, and this appeal is from such decree. The cause was heard upon the pleadings, and proofs taken before the court.

The contract in question was as follows:

"Outline of proposition between Howard Greer and Morris Sellers:

Greer to take all of the Greer patents, and all of the special machinery attached to punching machine; all other appliances belonging to the making of spikes; he surrendering all of his stock in M. S. & Co. and to furnish M. S. & Co. complete set of templates for splices; M. S. & Co. to loan machine No. 4 for six months and pay Howard Greer $1,800 towards a new machine for cutting spikes; Howard Greer to fill all of the present orders so far as the material now on hand will complete. This agreement to be put in proper form at as early a date as possible, pending the return of the company's attorney to draw up the necessary releases, etc.

MORRIS SELLERS.

Tuesday, Sept. 4, 1894."

The said proposition was delivered on or about the day of its date by the signer, Morris Sellers, one of the appellees, to the appellant, who is the same person mentioned therein as "Greer," and it was alleged and proved that wherever in said writing "M. S. & Co." occurred the corporation of Morris Sellers & Co. was meant.

It seems that the appellant and the appellee, Morris Sellers, were associated together either as partners, or as sharers in the profits of a business that was carried on under the name of Morris Sellers & Co. in the manufacture of railroad spikes, etc., and so continued to be for a period of about four-

teen years prior to June, 1891.   In the last named month they organized a corporation, under the laws of Illinois, for carrying on the same business in the name of Morris Sellers & Co., incorporated, with a capital stock of $100,000, divided into one thousand equal shares, of which the said Morris Sellers owned 499 shares, the appellant 499 shares, and a son of each of them one share.   None of the capital stock was paid for in cash by either of the shareholders, but it was based on the estimated value of certain patents owned by the old firm and the going business, and each of the parties took, as stated, one-half of the shares—the two shares to the sons being given apparently to facilitate the organization of the corporation.

Morris Sellers was made president and treasurer, and the appellant secretary, and they, with their two sons, constituted the board of directors.   Morris Sellers had charge of the finance and contracting, and Howard Greer had charge of the manufacturing part of the business at the mill.

Such relative interest and management of the parties in the corporation always remained the same down to the time said proposition was made.

At length, difficulties arose between the Greers—father and son—on the one side, and the Sellers—father and son— on the other, with the result of the foregoing proposition being made by the elder Sellers to the elder Greer.

It seems to be plain that the two sons were mere nominal shareholders and mere formal directors in the corporation, and that the corporation was in substance owned equally, and controlled by the elder Sellers and the elder Greer.

Wherever in the record any action of the board of directors is shown, the sons invariably acted with their respective fathers, and it is quite plain they exercised no independent judgment in the affairs of the corporation.

The proposition so made by Sellers to Greer was immediately accepted by the latter, and with the consent and knowledge of both parties, including their respective sons, the machinery which Greer was to take was, within a few days, begun to be removed from the factory to another shop or factory provided by Greer in a different part of the city.

The teamster who, by contract with Greer, did the moving, testified concerning what he removed as follows:

"Along about September 1, 1894, I did teaming for Howard Greer; was asked to figure on moving a lot of machinery and stuff. I came to his office; Greer sat at a desk opposite, and he introduced me to Sellers, and said: 'This is the man that was figuring on moving the stuff away.' I did not agree on the terms that day, but a day or two afterward the price was set, and I went on and did the work. The Morris Sellers referred to was the old gentleman. This conversation took place at the factory. We had always done work for Morris Sellers & Co., and did it after this material was removed; it would be difficult to describe the material moved; a lot of rolls, a stamping machine, weighing fifteen or eighteen tons, a promiscuous lot of stuff. The machinery was used for making railroad spikes; should think I moved about 200 tons in a day; could not tell exactly how much, because I would get loads at my convenience; did the job under contract, not by the day. I carried all this machinery and stuff from the factory of Morris Sellers & Co. to Austin avenue."

And it is otherwise made to appear that all the machinery and appliances, including the loan of "Machine No. 4," excepting an annealing furnace which, for the convenience of the Sellers company, was not taken, were actually removed to the new place of business provided by Greer, and there is no question but that the removal was made with the knowledge and consent of the Sellers, father and son.

In substance, all that remained to be done under the proposition was that Sellers should pay the sum of $1,800 and assign the patents to Greer, and that Greer should surrender the stock held by himself and son, and furnish the set of templets, or, as they are spoken of, templates. The unfinished orders were completed by Greer, as provided in the proposition, and he subsequently, on November 7, 1894, offered to deliver the stock of himself and son, duly assigned, and tendered the templets, and demanded the annealing furnace and an assignment of the patents to him.

On September 18, 1894, the attorney of Morris Sellers prepared, and Sellers presented to Greer, a more formal proposition, signed in the name of the corporation by Morris Sellers, its president, referring to their mutual understanding and embodying substantially the same propositions as were contained in the original proposition of September 4th, with the addition of what appear to be mainly matters of detail, and some provisions with reference to mutual releases.

Greer testified, and there was no contradiction of his testimony in that regard, that he was satisfied with the paper so prepared except as to two matters, one giving an additional month's time to finish some splice bar orders from machine No. 4, and the other that the papers should be executed by the son of Sellers, as well as by the son of Greer, who, it was expressed in the proposition, should join in the papers; and that Sellers agreed to have such changes made, but never again brought the paper to Greer.

It does not appear that anything further was done toward completing the agreement of the parties, except that several meetings of the directors and stockholders of the corporation were held between September 25, 1894, and October 29, 1894, at which ratification of the proposition of September 4, 1894, was considered, but was always defeated by Sellers and his son voting for delay, or by Sellers, as chairman, refusing, upon various pretexts, to put the motion.

It appears that after about September 4, 1894, which was the date of the proposition made by Sellers to Greer, the appellant Greer ceased to have anything to do with the affairs of the corporation, except to finish the work mentioned in the proposition, but such affairs were thereafterward wholly managed by Sellers.

On November 9, 1894, two suits were begun against the corporation, in which suits pleas were filed by authority of Sellers, and without the knowledge of Greer, admitting the amounts claimed in each, and judgments therein for about $28,000 were rendered on November 20, 1894, and the property of the corporation was levied upon under executions

issued thereon.    This bill was then filed on November 22, 1894, and on November 26, 1894, the appellant Greer and his son filed another bill, charging that Sellers was wrecking the corporation, and praying for a winding up of the corporation and the appointment of a receiver.

Under the last named bill a receiver of the corporation was appointed, and by order of the court all of the machinery and appliances removed by Greer in pursuance of said proposition, were taken possession of by the receiver.    And subsequently, the same, together with all the other property of the corporation, including all the letters patent referred to in said proposition were sold by the receiver, under the directions of the court, to one of said judgment creditors; but the inference is strong from all the evidence that the property so bought by the creditor was afterward turned over to Sellers, who formed a new corporation and continued to carry on the same business at the old place.

There can, we think, be no question but that the proposition made by Sellers and accepted by Greer constituted a valid contract.

And although relating to personal property, yet embracing letters patent, which, according to all the evidence, gave to the machinery and appliances that were mentioned substantially all the value they possessed, it was such a contract as equity will enforce the specific performance of.

And being a contract which may be specifically enforced, if by reason of events occurring subsequent to the filing of the bill a specific performance can not be decreed, equity, having obtained jurisdiction, will proceed and award all damages for non-performance which, under other circumstances, might be recoverable only at law.    1 Pomeroy's Eq. Juris., Secs. 237 and 238.

So here, the contract being one that specific performance of would be enforced under the circumstances existing at the time the bill was filed, and by subsequent proceedings in another suit the subject-matter of the contract having been sold by the receiver, in that suit, and thus put beyond reach in this suit, the court should have gone on and deter-

mined what, if any, damages the complainant was entitled to for the failure of Sellers to perform the contract.

The point is made that because it was in a suit brought by Greer for the appointment of a receiver and a winding up of the corporation, that the subject-matter of the contract was sold by the receiver, Greer is estopped from claiming damages. But we think not. That other suit was not begun until after Sellers ought to have performed his contract, and after he had refused to do so.

Greer was not required to stand by and see the property of the corporation, without fault on his part, wasted by them into whose hands its management had fallen.

The patents, without which the machinery which had been delivered to Greer was comparatively valueless, still remained within the legal control of the corporation. The corporation, acting through Sellers as its president, had practically confessed judgments for a large amount, and there was danger that through the connivance of Sellers the patents which under the contract ought to have been assigned to Greer, would become utterly lost to Greer, to whom they rightfully belonged.

Under such circumstances Sellers ought not to be permitted to say that because Greer filed a bill for a receiver of the corporation, through whom the patents as well as the other property of the corporation was sold to pay its debts, he, Sellers, should be relieved from damages because of his refusal to carry out the contract.

But the further point is urged that Sellers is not accountable in any sense, because he contracted to deliver to Greer property which was not his own, but belonged to the corporation.

We regard this as a mere subterfuge. Greer and Sellers were the only persons who possessed any beneficial interest in the corporation. Together they owned in equal proportions, all but two of its one thousand shares of capital stock, and those two excepted shares were held one apiece by a son of each of them. These sons were in the corporation as nominal shareholders only. They never paid any-

thing for their shares, and it is clearly inferable that they held the shares merely to enable the corporation to perform its functions, and to do in its affairs whatever their respective fathers wished or requested.

If Sellers, as president of the corporation, had assigned the patents to Greer, there would have remained no one but Greer to complain, and he would have been estopped from complaining by having contracted to accept them.

It is also manifest that had Sellers not wished it to ·be otherwise, he could have caused, by his mere vote, the proposition to be expressly ratified by the corporation at any one of the numerous stockholders' or directors' meetings that were held to act upon his proposition. Therefore, to say, as Sellers' counsel do, that Sellers could not have legally performed his contract, is to argue idly.

Moreover, everybody, shareholders and directors, who had any interest in the corporation, knew of the contract that Sellers had made, and stood by and assented to the performance of substantially everything that remained to be performed under it on Seller's part except the assignment of the patents.

Ratification is as susceptible of being made by a corporation as by an individual, and it is not always necessary that either the board of directors, as such, or that stockholders specially convened, should expressly act upon the subject-matter needing ratification.

There may be ratification by acquiescence and general conduct, under a knowledge of all the facts, as well as by express action.

"A corporation, like an individual, may be bound by a ratification evidenced by its acts, and such ratification need not be in writing, even though it be of an act done without authority." L. N. & C. Ry. Co. v. Carson, 51 Ill. App. 552; same case, 151 Ill. 444.

Here was a contract entered into and largely executed, between two persons who were alone interested in the affairs and property of the corporation, to divide up between themselves the whole of the corporate property, and sever

their interests in that property. It was agreed by both parties that their continued association within the corporation was opposed to the interests of the corporation as well as to their individual interests. It was clearly within the power of the contracting parties to make effectual their agreement to separate by doing what they legitimately might do, and they agreed to do it.

One of the parties thereupon determines that he will not perform what he has agreed to do, and has the power to do, and seeks to shelter himself behind a pretext that the corporation must act, and having the power to prevent the corporation from acting, does so, and then says he should be relieved because the corporation has not acted. This is inequitable, and should not be permitted.

It is said there were creditors of the corporation whose assent was necessary. Creditors, as such merely, had no interest in the corporation. It was clearly a solvent corporation, and the inference is very strong that any subsequent difficulties into which the corporation was plunged, were brought about by the procurement of Sellers for the express purpose of wrecking the corporation and obtaining for himself the whole of the corporate property, as he appears to have done, through the aid of the creditors he set in motion.

The Superior Court should have held the bill for the purpose of ascertaining what, if any, damages the appellant is entitled to for a failure by Sellers to perform his said contract, and the decree is reversed and the cause remanded for that purpose.