# A. J. Lockett, Appellant, v. Clifford Thorne, Appellee.

## Gen. No. 26,143.

1. DAMAGES—*deposit to secure agreement to arbitrate as liquidated damages*. Where certified checks for $500 were deposited with defendant by both parties to an arbitration agreement which provided for submission of a certain controversy to arbitrators at a certain time and place and that "in the event that either of the parties shall fail, without a proper and lawful justification, to appear" at the time and place appointed, ready to proceed with the arbitration, the said sum of $500 shall be forfeited as liquidated damages, plaintiff, who appeared at such time and place and refused to submit the question to arbitration or to carry out the award made against him by the arbitrators, his only excuse being that he did not think he would get a fair deal and did not think the original instrument as drawn up was legal and binding, was not entitled to recover from defendant the amount so deposited.

2. ARBITRATION AND AWARD—*when agreement to submit to arbitration not revocable*. Under section 3 of "An act to revise the law in relation to arbitrations and awards," in force July 1, 1917, as amended in 1919 [Hurd's Rev. St., ch. 10, Callaghan's 1920 Stat. ¶ 474(3)], providing that "a submission to arbitration shall, unless a contrary intention is expressed therein, be irrevocable," an agreement to submit a controversy to arbitration was not revocable at any time before the award was made at the will of either party.

3. ARBITRATION AND AWARD—*when agreement to submit to arbitration not invalid*. An agreement to submit to arbitration a particular controversy which has arisen is not invalid as an effort to divest the courts of their jurisdiction.

4. CORPORATIONS—*authority of agent to sign arbitration agreement*. Where an arbitration agreement was first signed in the name of a corporation by a certain person and both parties thereafter ratified the agreement by sending checks to the stockholder and the corporation sent the person signing for it to attend the hearing as its attorney, it sufficiently appeared that he was authorized to sign the agreement for the corporation.

Appeal from the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed October 4, 1921. Rehearing denied October 17, 1921.

John A. Bussian, for appellant.

Sinden, Hassell & Osusky and Henry C. Warner, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

On October 24, 1919, plaintiff commenced an action in replevin in the municipal court of Chicago against defendant. In his affidavit he stated that he was lawfully entitled to the possession of a certified check for $500, dated September 24, 1919, drawn on the Dixon National Bank of Dixon, Illinois, signed by plaintiff and payable to the order of Clifford Thorne, trustee; that on September 25, 1919, plaintiff deposited the check with defendant and that the latter now wrongfully detains the same. After the bailiff had returned the writ unexecuted, plaintiff changed his action to trover and in his statement of claim averred, in substance, that said check was deposited with defendant subject to the terms and conditions of a certain agreement (entered into by and between plaintiff and the Sterling Oil and Refining Company, a corporation, hereinafter referred to as the Oil Company) of submission of certain differences to arbitration; that on October 20, 1919, before the arbitration hearing was had, plaintiff, "for just and lawful reasons," notified defendant, the Oil Company, and the three arbitrators, Fred W. Lehman, Jr., E. E. Grant and John H. Passmore, that he (plaintiff) would not submit said differences to arbitration and would not abide by any award made by the arbitrators; that defendant was not a party to said arbitration agreement and had no financial interest in said check or the proceeds thereof, "he being a mere stakeholder"; that on the same day he demanded of defendant the return of said certified check so deposited, but defendant refused to return the same or the proceeds thereof to plain-

tiff, and, "in violation of his duty as trustee," converted the check to his own use by depositing the same in a Chicago bank, and the same was in due course paid by the Dixon National Bank; and that by reason of defendant's unlawful conversion of the check plaintiff is entitled to judgment against him for the sum of $500 and interest. Attached to the statement of claim and made a part thereof is a copy of said agreement. The defendant in his affidavit of merits stated that he was not guilty of the wrongs and grievances complained of, and that he had not converted the check or proceeds to his own use. The case was tried before the court without a jury resulting in the court finding the defendant not guilty and entering judgment against the plaintiff for costs, which judgment plaintiff by this appeal seeks to reverse.

The said agreement is dated September 19, 1919, and is signed by the Oil Company "by Geo. H. Fleishman," and by the plaintiff, "doing business as Central Oil Marketing Co." It recites that, as a result of "certain business transactions heretofore had" between plaintiff and the Oil Company, a Kansas corporation with its chief place of business in Wichita, Kansas, "certain differences have arisen" between the parties, which differences "the parties desire to dispose of and determine by arbitration." And the parties agreed therein that the disputes and differences "which now exist" between them "shall be and the same are hereby referred to the arbitration and determination of three arbitrators;" that Fred W. Lehman, Jr., of Kansas City, Missouri, shall be the arbitrator named by the Oil Company, that E. E. Grant, of Chicago, shall be the arbitrator named by A. J. Lockett, and that Robert L. Welsh, of New York City shall name the third person who is to act as arbitrator; that in the event any of the three arbitrators shall fail, refuse or give notice that they are unable to act within 20 days after receipt of notice of or request

to act, "then Clifford Thorne, of * * * Chicago, shall name a person to act in lieu of the arbitrator, who so fails, refuses or is unable to perform;" that the members shall meet on October 20, 1919, at 2 o'clock p. m., at Room 1414 Lytton Building, Chicago, and such arbitrators shall then proceed to hear such testimony, and examine such exhibits and evidence, as shall be presented by the parties hereto, and the attorneys for the respective parties shall examine and cross-examine the witnesses and make such oral arguments as may be deemed proper and necessary, and the arbitrators shall make their award and finding in a report in writing, signed by at least a majority of said arbitrators, and "the said award shall then be legal and enforcible by any court of competent jurisdiction in the United States of America"; that the arbitrators shall also fix the proper costs to be assessed in the proceeding; that "the award so made shall be final and shall not be appealable by either of the parties hereto," and that upon payment thereof it shall be a full and final adjustment and settlement of all claims and demands held by either of the parties against the other; and that the proper costs of the proceeding, not including attorneys' fees, shall be divided equally between the parties. The agreement contained the following paragraph:

"Each of the parties hereto agree to deposit, on or before September 25, 1919, the sum of $500, either in cash or by certified check payable to Clifford Thorne, * * * to guarantee the prompt and faithful performance of the provisions of this agreement, and in the event that either of the parties shall fail, without a proper and lawful justification, to appear on October 20, 1919, at the place aforesaid, ready to proceed with said arbitration, or if an award shall be made against either of the parties hereto and such party * * * shall fail to fully pay and compensate the amount of the award allowed against said party, in the manner and within the 60 days above specified,

then said sum of $500 shall be forfeited as liquidated damages for failure to appear or to pay said award allowed as aforesaid, but said sum of $500 shall not be deducted or set off as part payment of the award allowed in the arbitration. If either or both of the parties hereto perform all the terms of this agreement in the manner herein specified, the sum of $500 deposited with Clifford Thorne as aforesaid shall be returned to the party performing.''

It appears from the evidence introduced upon the trial that within 5 days following the signing of the agreement, each of the parties thereto deposited certified checks with the defendant, each check being for $500; that defendant is an attorney-at-law having his office at Room 1414 Lytton Building, Chicago; that prior to the date of said agreement, George H. Fleishman, of the Oil Company, and plaintiff in writing requested defendant to act as arbitrator in settling the differences which had arisen between the Oil Company and plaintiff but that defendant refused to act as arbitrator because of certain professional relations which he had had with the Oil Company; that on September 19, 1919, both Fleishman and plaintiff called at defendant's office and on that day said agreement was drafted and executed; that Robert L. Welsh, who by the agreement was to appoint the third arbitrator, appointed one E. E. Shock, of St. Louis, Missouri, to act in that capacity; that subsequently plaintiff objected to said Shock acting and thereupon Shock refused to act; that shortly before the hearing defendant appointed John H. Passmore, of Chicago, who accepted the appointment; that neither party to the agreement made any specific objections to said Passmore acting as the third arbitrator; that at the time set for the hearing, October 20, 1919, at 2 p. m. and at the place specified, plaintiff and his attorney, defendant, Fleishman and one Brooks, attorney for the Oil Company, and all three of the arbitrators were present; that prior to the taking of any testimony

plaintiff served written notice on each of the three arbitrators that he "had decided not to submit to arbitration" the controversy existing between himself and the Oil Company, "as provided in the agreement * * * wherein each of you is named as an arbitrator," that he desired said notice to be considered as a "complete revocation of any authority" that he might have granted them to arbitrate the controversy, and that he would not abide by any award made by them; that at the same time plaintiff served written notice upon defendant to the same effect and therein demanded that defendant return to him said certified check of $500; that said arbitrators decided to proceed with the hearing and defendant refused to return to plaintiff said check; that testimony was heard by them and that before the conclusion thereof plaintiff and his attorney left the room; that on the same day defendant deposited both checks for $500 in a Chicago bank to his credit in a separate account, known as "Clifford Thorne, Special"; that on the same day at the conclusion of the hearing, the arbitrators made an award in writing, signed by all three of said arbitrators, wherein they found that plaintiff was justly indebted to the Oil Company in the sum of $4,629.59, and adjudged that the Oil Company recover of plaintiff said sum, and that the costs of the proceedings amounted to $150, not including attorneys' fees, and that plaintiff pay one-half of said costs and the Oil Company the other half; that on the same day, and after the award had been made, defendant, on the demand of the Oil Company, delivered to it a check for $500 drawn on said special account, payable to the order of the Oil Company, which check was subsequently paid; that on the same day the Oil Company notified defendant that it considered and declared that the other $500 in said separate account, being the proceeds of plaintiff's said check, had been forfeited to it under said contract, and demanded said sum from de-

fendant, but it still remains in said separate account to defendant's credit, as defendant testified, "in his representative capacity for the proper owner."

We think it clear from the evidence that plaintiff failed, without any "proper and lawful justification," to appear on the day named in the agreement "ready to proceed with said arbitration." His only reasons for his actions, as he testified, were "because I did not think I would get a fair deal, and the other reason was that I did not think the original instrument as drawn up was legal and binding." He introduced no evidence even tending to show that there was anything irregular or improper in the appointment of any of the arbitrators or in their subsequent actions. And we think that by virtue of the agreement his failure to so appear justified the Oil Company in forfeiting the proceeds of his $500 check as liquidated damages (*Gobble v. Linder*, 76 Ill. 157, 159; *Pinkney v. Weaver*, 216 Ill. 185, 196), and that under the facts and circumstances in evidence, defendant was fully warranted, as stakeholder, in refusing to return to plaintiff the proceeds of said check, and that he was not guilty of any conversion thereof as against plaintiff.

Counsel for plaintiff urges that the agreement for arbitration was revocable at any time before the award was made at the will of either party. Under section 3 of "An Act to revise the law in relation to arbitrations and awards," in force July 1, 1917, and as amended in 1919 [Hurd's Rev. St. ch. 10, Callaghan's 1920 Stat. ¶ 474(3)], we do not think it was. In *White Eagle Laundry Co. v. Slawek*, 296 Ill. 240, 244, it is said:

"At common law the rule was well established that either party might revoke the submission at any time before the award was made, thus rendering the submission wholly ineffectual and taking from the arbitrator all power to make a binding award. * * * Section 3 of the Arbitration Act [Callaghan's 1920

Stat. ¶ 474(3)] provides that a submission to arbitration shall, unless a contrary intention is expressed therein, be irrevocable. The legislature has the right to enact such a provision unless it is prohibited by the constitution from so doing. * * * The statute, in making the agreement irrevocable, confers no new power and takes away no inalienable right. It simply recognizes the agreement of the parties and enforces it. * * * The effect of making the agreement irrevocable was merely to provide for the specific enforcement of the contract and it violated no constitutional rights.''

While it has been held that an agreement in an *executory* contract to submit any controversy which *may* arise under it to arbitration is an effort to divest the courts of their jurisdiction and is invalid because contrary to public policy, still this principle applies only where there is a general agreement to submit all controversies to arbitration and does not apply to cases where a controversy *has arisen* and an agreement is made to submit the particular controversy to arbitration. (*White Eagle Laundry Co. v. Slawek, supra,* p. 245.) In the instant case, the agreement was to submit to arbitration certain differences which had arisen between the parties.

And we do not think there is any merit in counsel's point that it does not sufficiently appear that Fleishman was authorized by the Oil Company to sign the arbitration agreement in its behalf. It was first signed in the name of the Oil Company by Fleishman and below his signature appears that of plaintiff. Furthermore, both parties thereafter ratified the agreement by sending checks to defendant for $500 each in accordance with its terms, and the Oil Company sent Fleishman and its attorney, Brooks, from Wichita, Kansas, to Chicago, to attend the hearing before the arbitrators. (10 Cyc. 1076; *Louisville, N. A. & C. Ry. Co. v. Carson,* 151 Ill. 444; *Hall v. Norwalk Fire Ins. Co.,* 57 Conn. 105.)

For the reasons indicted the judgment of the municipal court is affirmed.

*Affirmed.*

BARNES and MORRILL, JJ., concur.