## St. Louis Union Trust Company *v.* Chicot County Cotton-Alfalfa Farm Company.

### Opinion delivered March 5, 1917.

1. Mortgages—provisions for release—maturity.—Where property is subject to a trust deed, which provides that portions thereof may be released from its operation by the payment of certain sums, where no language in the contract expressly limits the right to secure a release to a period anterior to the maturity of the debt, the right exists at least until foreclosure proceedings are instituted.

2. Estoppel—void note—ratification.—Notes, secured by a mortgage on Arkansas lands were executed in Missouri in 1910, the payee being a New York corporation, doing business in Missouri without complying with certain Missouri Statutes. Under the law of Missouri the notes were void. In 1912 the payee corporation complied with the Missouri Statutes. *Held*, the maker of the notes could not escape liability thereafter, when it appeared that it had ratified the same after the payee had complied with the Missouri Statute, by its conduct, in treating the notes as valid, in securing an extension, and in making payments thereon.

3. Bills and notes—payment to payee after assignment.—The payment of a note to the payee, after assignment by him to an innocent purchaser for value, is no defense to an action by the innocent purchaser.

Appeal from Chicot Chancery Court; *Zachariah T. Wood*, Chancellor; affirmed.

*Stewart, Bryan & Williams* and *Hope & Seibert*, of St. Louis, Mo., for appellants.

1. The chancellor erred in releasing from the lien the 800 acres claimed in the appellee's, Hollywood Farms Co., cross-complaint, because (1) The release provision is so vague and uncertain as to be void and uninforceable. 195 Mo. 91, 101; 32 *Id.* 79; 67 Cal. 43; 95 Ind. 326. (2) It should be interpreted in connection with the entire instrument, and any right to have the land released by paying $9.00 an acre was forfeited and extinguished when appellees failed to comply with the agreements on their part; they were in default and after the maturity of the debt the right to release did not exist. 133 Mass. 120, 121; 9 Cyc. 579; 6 Rul. Case Law, § 227, p. 837; 43 Fed. 535; etc. (3) No demand was made at the time the $5,000.00 was paid, nor when

a subsequent payment of $2,000.00 was made.   Jones on Mortg., § 981, p. 1051 (6 ed.).   (4) There was no tender of the $200.00 made.   Only $7,000.00 was paid when $7,200.00 was the proper amount.   21 Ark. 563; 30 *Id.* 505; 90 *Id.* 206; Hunt on Tender (ed. 1903), §§ 222, 86, 234; 34 Ala. 126, etc., etc.

2.   On the cross-appeal.

The payment of the $4,000.00 was paid to the American Forest Co., after the notes were assigned to plaintiffs, and hence no part of it ever reached plaintiffs, and no credit was allowed.   16 Wall (U. S.), 271; 5 Otto (U. S.), 16; 93 Iowa 572; 25 Kans. 625; 131 Wisc. 152; 80 N. W. 801; 113 Ark. 588; 104 *Id.* 388, 395; 113 *Id.* 120, 123-4, 28, 34.   Plaintiffs were innocent purchasers before maturity—they were pledgees.   102 Ark. 472, 451, 459-60; 37 *Id.* 556; 41 *Id.* 418; 18 A. & E. Enc. Law, 608.

3.   The Missouri statutes as to foreign corporations do not apply.   The property was wholly in Arkansas, and the transaction was interstate.   229 Mo. 397; 217 U. S. 91; 160 Mo. 435; 184 S. W. 999; 153 Mo. App. 139; 25 Mo. 3; 132 U. S. 282.   The company was not doing business in Missouri, within the scope of its charter.   184 S. W. 119.   The mere taking a mortgage and note to secure a debt is not doing business contrary to law.   54 Ark. 566; 62 *Id.* 53; 60 *Id.* 120; 113 *Id.* 72; 105 *Id.* 281.   The American Forest Co. did comply with the statute, and was afterwards duly licensed.   This subsequent taking out of license cured the transaction.   77 Ark. 203; 184 S. W. 999, 1024.

4.   The decree is erroneous in that part releasing the 800 acres, but correct in all other respects.

*J. C. Gillison,* for appellees.

1.   The contract was purely a Missouri contract, and must be construed and enforced under the Missouri laws.   Rev. St. Mo. 1909, §§ 3037-8-9-40; 245 Mo. 168; 216 Fed. Rep. 878.   Where the contract or debt is void the security is void.   111 Mo. 620; 1 Jones on

Mortg. (3 ed.), § 110, p. 84, § 610, p. 481; 66 Ark. 77; 73 *Id.* 518.

The Forest Company was a New York corporation doing business in Missouri, in violation of law, with Missouri corporations and was not interstate business.

2. The $4,000.00 paid should have been credited on the notes for the purchase money. The notes had not been endorsed to the plainiffs when this payment was made.

3. The release clause was certain and definite. The description of the land to be released is made so by the selection. The right may be exercised after as well as before default in the payment of the mortgage debt, and even after foreclosure suit is begun, if before final decree. 27 Cyc. 1415, 1416 and note.

4. A tender was made and kept good. $7,000.00 was paid and accepted and the $200.00 was deposited with the clerk of the court.

McCulloch, C. J. This is an action to foreclose a deed of trust executed by the Chicot County Cotton-Alfalfa Farm Company (a Missouri corporation) to B. H. McFarland, as trustee, conveying two large tracts of land in Chicot county, Arkansas, one of the tracts containing 10,200 acres and the other 5,600 acres, to secure a debt in the sum of $60,000.00, evidenced by four promissory notes executed by said defendants to the American Forest Company, a New York corporation. Said notes were transferred by the payee to the St. Louis Union Trust Co., and Broadway Bank of St. Louis, as collateral security for indebtedness of the payee to said assignees, who are plaintiffs in the present action. The Hollywood Farms Company was joined as defendant in the action on account of having subsequently purchased from the mortgagor 800 acres of the land described in said deed. Said notes and deed of trust were executed on December 1, 1910, falling due, 3, 4, 5 and 6 years, respectively, from date, and were assigned, as aforesaid, to the plaintiffs before maturity, the first maturing note being assigned to Broadway

Bank of St. Louis, and the other three to the St. Louis Union Trust Co. Defendant Hollywood Farms Company in its answer and cross-complaint pleads the purchase of 800 acres of the land from the mortgagor, and the right to have the same released under a clause to that purport and effect in the deed of trust. The other defendant, Chicot County Cotton-Alfalfa Farms Co., pleads a payment of $4,000.00 which has not been credited on the notes, and also as defense against recovery of any part of the debt pleads that the original beneficiary in the trust deed, the American Forest Co., was a New York corporation, doing business in the State of Missouri without having complied with the laws of the latter State, that said transaction between the parties took place in the State of Missouri, and under the laws thereof the contract was void. The chancellor sustained the defense of defendant, Hollywood Farms Co., and decreed a release of said lands purchased by that defendant, but decided against the contentions of defendant, Chicot County Cotton-Alfalfa Farm Co., on all of its pleas and rendered a decree foreclosing the mortgage for the full amount of the debt. The decree provides, however, that "should there be any surplus going to the American Forest Company out of the proceeds of said sale after first paying all costs of this action and the amounts due from the American Forest Company to the plaintiffs respectively, $4,000.00 of such surplus, with interest thereon at the rate of 5% per annum from August 1, 1914, until paid, shall be paid out of such surplus to the defendant Chicot County Cotton-Alfalfa Farm Company."

Both sides have appealed to this court.

The clause in the deed of trust under which the release is claimed, reads as follows:

"Now, if the said four notes for fifteen thousand ($15,000.00) dollars each, and interest thereon, be well and truly paid as the same shall become due and payable, according to the tenor and effect of said notes, and if the said covenants and agreements in regard to taxes,

mechanics' liens or interest on said prior mortgage notes be faithfully kept and performed and all money paid by the said party of the third part, its endorsees or assigns, on account of said taxes, liens and interest as above provided, be fully paid,

"Then this deed shall be null and void, and the property hereinbefore conveyed shall be released at the cost of said party of first part, its successors and assigns, shall have the right at any time to procure the release of any portion of said tract of 5,600 acres of land from the lien hereof by payment to the party of the third part, its endorsees or assigns, of $9.00 per acre, for the land so to be released; and shall also have the right at any time to procure the release of any portion of said tract of 10,200 acres above referred to from the lien hereof by the payment to the party of the third part, its endorsees or assignees, of $3.00 per acre for the land so to be released; and all payments so made for the release of land from either of said tracts shall be applied upon the earliest maturing of said four notes at the time outstanding; and to procure such release of record of any portion of said land hereunder, it shall not be necessary to procure said notes or any of them. And in case of payment of all of the said four notes and interest thereon, and the observance of the covenants and agreements herein set out by party of the first part, its successors or assigns, so as to entitle it or them to a release of all the property above described, or in case of the payment to the party of the third part, its endorsees or assigns, of $9.00 per acre for any portion of the 5,600 acres of land above described, or $3.00 per acre for any portion of the 10,200 acres above described, so as to entitle party of the first part, its successors or assigns, to a release as set out above in this paragraph, then the party of the second part, or his successors in this trust, its successors or assigns, upon its request and at its expense, all proper instruments or deeds of release that may be necessary to release such land, or any portion thereof,    *    *    *    *

"But should default be made in the payment of said notes or any of them," then the trustee shall proceed to sell said lands, etc.

(1)   The plaintiffs contend that this clause in the contract is void, in that it does not specifically describe any of the lands to be released, and also contend that the contract only confers the right to obtain release by payment of part of the secured debt before the maturity thereof.   Cases are cited by plaintiffs on the brief in support of the contention that the clause is too vague for enforcement, but we think those cases have no application to the language employed in this contract, which we think is not limited in its operation to a release sought before the maturity of the debt.   There is some conflict in the authorities on this proposition, but we think that sound reason is with that line of authority which holds that unless there is language in the contract expressly limiting the right to secure a release to a period anterior to the maturity of the debt, the right exists at least until foreclosure proceedings are instituted.

The authorities on the subject are collated in 27 Cyc., p. 1415-1416, where the rule is stated to be that the right to obtain a partial release under a contract conferring it "may be exercised after as well as before default in payment of the mortgage debt."   One of the most satisfactory discussions on the subject is found in the opinion of the Supreme Court of Minnesota in the case of *Vawter* v. *Crafts*, 41 Minn. 14, where the following statement is found:   "It is claimed, however, that this agreement to give releases is conditioned upon performance by the mortgagors of all the covenants and conditions of the mortgage, and that, as default had been made in these, the right to demand a partial release no longer existed.   There is certainly no express provision to this effect.   By its terms the covenant is unconditional.   If there is any such condition, it must be implied from other provisions in the mortgage.   The covenant is not in its nature necessarily dependent on any other covenant or condition in the instrument." * * * *

"The provisions of the mortgage as to foreclosure and sale of the mortgaged premises, in case of default, do not support defendant's construction of the covenant. They are to be construed in connection with that covenant, and as qualified by it.   So construed, there is no inconsistency between them.   Reference is made to the supposed injustice and unreasonableness of construing the covenant as requiring the mortgagee to execute a partial release after there had been default in the conditions of the mortgage, and interest had accrued, and perhaps expenses incurred in commencing foreclosure proceedings.   But we cannot see sufficient force in this to warrant attaching by implication a condition or limitation to the covenant.   If the mortgagee is paid the proportionate share of the accrued interest, and reimbursed for his expenses, we do not see how he can be prejudiced.   His remaining security would be just as ample as if the release had been demanded before default, and, in case foreclosure proceedings had been commenced, they would not be defeated or affected, as to the remaining lots, by the execution of a partial release.   On the other hand, a contrary construction might work harshly against purchasers from the mortgagors, and defeat the very purpose for which the covenant was inserted."

The sum necessary under the contract to release the 800 acres of land from the mortgage had been paid, except the small balance of $200, which had been tendered.   The sum so paid ($7,000) for the release was received by one of the plaintiffs which held the first maturing note, and that sum was credited on said note.   We think the right to affect a release existed at the time it was asserted and the chancery court was correct in the decision on that branch of the case.

(2)   The first question presented by the appeal of the defendants concerns the ruling of the court against the contention of the defendants that the notes are void because of the fact that the payee of the notes and beneficiary under the deed is a New York corporation and had failed to comply with the laws of the State of Missouri when the tran-

saction was had between the parties. It is agreed that the said corporaion had not complied with the laws of Missouri and the evidence in the case shows that it was doing business in that State, and that the loan made to the defendant Chicot County Cotton-Alfalfa Farm Co., was in the State of Missouri in connection with the business being operated there. The American Forest Company had an office and place of business in the city of St. Louis and the loan was made in connection with the business. The notes were dated in Missouri and made payable there. and, therefore, constituted Missouri contracts. The notes and deed of trust, as aforesaid, were executed on December 1, 1910, and the American Forest Company complied with the laws of the State of Missouri on January 27, 1912. The statutes of Missouri (sections 3039 and 3040, Revisted Statutes of 1909) require foreign corporations to comply with the laws of the State before doing business there, and the courts of that State have decided that all contracts made by a corporation which has not complied with the statute are void. *Amalgamated, Etc., Co.* v. *Mining Co.,* 221 Mo. 7; *Parke, Davis & Co.* v. *Mullett,* 245 Mo. 168. The defendants base their defense on the violation of that statute. The defendants are, we think, at the threshold of this contention met by the fact that even if the notes were void under Missouri statutes, they were ratified by the defendants after the American Forest Company had complied with the laws of that State. This ratification resulted from the conduct of the said makers of the note in securing extensions of time, and making payments on the notes. In other words, the makers of the notes treated them as valid at a time when the American Forest Company had complied with the laws of the State of Missouri and was authorized to do business there, and an estoppel to thereafter set up the invalidity of the notes results from such conduct. Joyce on Defenses to Commercial Paper, section 288.

(3) The only remaining question in the case is that concerning the claim of defendants that they should be credited with $4,000 paid for the extension. The evidence established the fact that this payment was made to the

American Forest Company after the assignment of the notes to plaintiffs, who were innocent purchasers, for value without notice of such payment. The assignees never received the payment and were not chargeable with the payment made to the original payee of the notes after assignment. Our conclusion is that the decree of the chancery court was correct in each particular, and the same is, therefore, affirmed.