MICHIGAN TRUST CO. *v.* HERPOLSHEIMER.

1. TRUSTS—COMMON-LAW TRUSTS.
   Express trusts, recognized at common law, were expressly recognized and saved from abolition by Revised Statutes of 1846 (chapter 63).

2. CORPORATIONS—POWERS OR PRIVILEGES.
   "Powers or privileges of corporations not possessed by individuals or partnerships," within meaning of constitutional provision providing for corporations (article 12, § 2), are, in effect, franchises from State provided to be offered by general law and accepted by individuals organizing corporation by compliance therewith.

3. TRUSTS—COMMON-LAW TRUST—CORPORATIONS.
   Common-law trust is not corporation, having no franchise, but is based on voluntary action of individuals.

4. SAME—VOLUNTARY ASSOCIATIONS.
   Common-law trust is recognized by statutes as voluntary association which may sue and be sued.

5. CORPORATIONS—VALIDITY OF LEASE—ADOPTION.
   Where validity of lease was recognized by corporation succeeding to property and rights of common-law trust and also by lessor's personal representatives, lease was adopted by both parties, thus rendering it valid even if previously void by reason of failure of common-law trust to file annual reports as required by statute (2 Comp. Laws 1929, § 10138).

6. LANDLORD AND TENANT—OPTION TO EXTEND LEASE—ACCEPTANCE.
   Option in lease of extending same for additional term by giving written notice was continuing offer, which, by acceptance, became valid and binding contract.

Case-made from Kent; Perkins (Willis B.), J. Submitted October 28, 1931. (Docket No. 52, Calendar No. 35,946.) Decided January 4, 1932. Rehearing denied April 4, 1932.

Bill by Michigan Trust Company and another, trustees under the will of William G. Herpolsheimer, deceased, against Ralph C. Herpolsheimer and others to determine the validity of lease made by plaintiffs' testator. From decree holding lease valid, defendant Ralph C. Herpolsheimer and certain other defendants appeal. Affirmed.

*Travis, Merrick, Johnson & McCobb,* for plaintiffs.

*Fred P. Geib* (*Goodspeed, Pendell & McGuire* and *Julius J. Herscher,* of counsel), for defendants and appellants.

*Willard F. Keeney* and *Knappen, Uhl, Bryant & Snow,* for defendants and appellees.

Potter, J. August 12, 1919, William G. Herpolsheimer owned certain real estate in the city of Grand Rapids known as the Herpolsheimer store building, and the old Hazeltine and Perkins building. On that date he made a lease of the real estate above mentioned to the Herpolsheimer Company, an alleged common-law trust, for a period of 10 years at a rental of $24,000 a year, and gave in the lease an option to the lessee for an additional 10-year term on the same conditions at a stipulated rental of $30,000 a year. The Herpolsheimer Company was engaged in the mercantile business in the city of Grand Rapids, and the shares in such common-law trust were held by William G. Herpolsheimer, Henry B. Herpolsheimer, Clara B. Herpolsheimer, and Clara B. Herpolsheimer as guardian for William S. Herpolsheimer and Edward M. Herpolsheimer, minors. William G. Herpolsheimer died February 24, 1920, leaving a will which was duly admitted to probate, which provided his real estate should go

to his son Henry B. Herpolsheimer, his daughter Anna A. Hardy, and the Michigan Trust Company, in trust with full power in their discretion to rent for any period of years any or all of said property, to erect buildings thereon and make alterations of and improvements upon any of said property, it being his intention that said trustees in all respects have the same powers with reference to the property and its disposition as testator might have if living. These trustees were to receive the income from such real estate and to pay to the wife of William G. Herpolsheimer $5,000 a year, and the balance of the income therefrom was to go one-fourth to Henry B. Herpolsheimer, one-fourth to Anna A. Hardy, one-fourth to Ralph C. Herpolsheimer, and one-fourth to William S. Herpolsheimer and Edward M. Herpolsheimer, grandchildren.

Henry B. Herpolsheimer died June 5, 1920. William B. Herpolsheimer, one of the trustees, died before that time. The Michigan Trust Company was appointed one of the trustees for the Herpolsheimer Company, the common-law trust.

December 21, 1923, the Herpolsheimer Company was incorporated, and the property of the common-law trust, above mentioned, was transferred to the Herpolsheimer Company, a corporation, in accordance with the several and respective interests of the parties interested in the trust. The shares of stock in the Herpolsheimer Company were held as follows: Caroline K. Herpolsheimer, 1,500 shares; Caroline K. Herpolsheimer and the Michigan Trust Company, guardians of Caroline B. Herpolsheimer, a minor, 935 shares; Anna A. Hardy, 1,777 shares; Clara B. Herpolsheimer, individually and as guardian for William S. Herpolsheimer and Edward M. Herpolsheimer, minors, 2,165 shares; the Michigan Trust Company as trustee for Ralph G. Herpol-

sheimer under the last will and testament of William G. Herpolsheimer, 1,777 shares; Arthur B. Herpolsheimer, 1,846 shares.

After the incorporation of the Herpolsheimer Company, it continued to operate the mercantile business, to occupy the premises under the lease, and to pay the rentals therefor, until September 28, 1926, when it gave plaintiffs, as trustees, notice of its election to exercise the option contained in the lease for an additional 10-year period. The bill alleges the parties negotiated for an increased rental, but finally agreed upon the basis at $30,000 a year. This 10-year lease has not been executed for the reason it is contended the original lease made by William G. Herpolsheimer to the Herpolsheimer Company was void. This is the important question in the case. It was agreed, on the trial, in open court that the validity of the lease was then the sole question for consideration. It is contended the Herpolsheimer Company, a common-law trust, had no legal existence, that it was a corporation, that it did not make reports to the State, and therefore was prohibited from doing business. It must not be overlooked that the real estate in question belonged to William G. Herpolsheimer. He could do with it as he saw fit. It is not claimed that he as the owner of the real estate and the dominant factor in the common-law trust, as landlord, took advantage of the common-law trust as a tenant and drove an unconscionable bargain with the lessee to which he stood in a fiduciary relation. On the other hand, it is claimed that, under the conditions subsequently developed in relation to his estate, he did not insist upon rent enough—at least those who now represent his estate should insist upon increased rent. Having an absolute right to lease the property, William G. Herpol-

sheimer could lease it on terms agreed upon, to whomsoever he saw fit; but appellants claim this necessarily presupposes a legal entity as a lessee and without such legal entity there can be no valid lease, and, by reason of common-law trusts like the Herpolsheimer Company being prohibited from doing business in Michigan without compliance with the corporation laws, there was no legal entity, and consequently no legal lease between the parties.

For many years there was no general corporation law in Michigan. Corporations were created only by special charter granted by the legislature. Those who desired the advantages of corporate organization were compelled to await legislative action. During this period, it was common practice to transfer property to trustees upon the terms and conditions of an express trust, which gave the trustees power to do the things a corporation usually might do. This was undoubtedly known to Judge Green when he prepared the Revised Statutes of 1846, which manifest no intention to in any way interfere with express trusts, though by chapter 63 of the Revised Statutes of 1846, "uses and trusts, except as authorized and modified by this chapter, are abolished." 3 Comp. Laws 1929, § 12967. "Express trusts may be created * * * for the beneficial interest of any person or persons where such trust is fully expressed and clearly defined upon the face of the instrument creating it." 3 Comp. Laws 1929, § 12977. So that trusts of the kind generally in use in Michigan at the time were expressly recognized and saved by the Revised Statutes of 1846. The trust here involved is an express trust created by an instrument in writing which points out directly and expressly the property, persons, and purposes of the trust, and as such was expressly provided for

by the terms of the Revised Statutes of 1846. Indeed, the persons, property, and purposes of the trust under consideration are so fully expressed and clearly defined that appellants contend it closely and completely followed the requirements of the corporation law of the State in its plan of organization and control in its operation. Such trusts, recognized at common law, were expressly recognized and saved from abolition by the Revised Statutes of 1846.

Article 12 of the Constitution of Michigan relates to corporations. It provides for their formation under general laws, prohibits their incorporation by special act of the legislature, and provides for the amendment, alteration, repeal or abrogation of special charters. Section 1, art. 12. It prescribes the period of their creation and for the extension of their corporate life. Section 3, art. 12. It fixes the liability of stockholders in corporations and joint stock associations. Section 4, art. 12. It prohibits their holding real estate for a longer period than 10 years, except such as is actually occupied by the corporation in the exercise of its franchise. Section 5, art. 12. Prohibits the renewal or extending of the corporate life of special charters. Section 6, art. 12. It provides for the establishment of rates for the transportation of freight and passengers by railroad companies, for fixing charges of express companies, and prohibits discrimination by railroad companies. Section 7, art. 12. Prohibits the consolidation of parallel or competing railroad lines. Section 8, art. 12. Prohibits the modification of the general banking law except upon a two-thirds vote of the members of each house of the legislature. Section 9, art. 12. It says, ''the term 'corporations' as used in this article shall be construed to include all associations and joint stock companies having

any of the powers or privileges of corporations not possessed by individuals or partnerships." Section 2, art. 12.

The language, "powers or privileges of corporations not possessed by individuals or partnerships," points out such powers and privileges are something separate and distinct from those possessed by individuals or partnerships. These powers and privileges are in effect a franchise from the State provided to be offered by general law and accepted by the individuals organizing a corporation by compliance therewith. The powers and privileges of a common-law trust are derived from the voluntary association of individuals. The trust receives no corporate franchise. Its members comply with no general corporation law. They receive no act of sovereign approval. They derive whatever power and authority they have from the voluntary action of the individuals forming the trust. The statutes recognize voluntary associations. Such associations may sue and be sued. A common-law trust is not a corporation. It has no franchise. It is based upon the voluntary action of individuals. It is a voluntary association and recognized as such by the statutes which provide that it may sue and be sued.

It is contended, however, that this court has decided that a common-law trust constitutes a corporation within the meaning of the Constitution. *Hemphill* v. *Orloff*, 238 Mich. 508 (58 A. L. R. 507), stripped of surplus verbiage, holds a common-law trust organized outside of Michigan amenable to the statute of Michigan regulating the right of foreign corporations attempting to do business in the State, which statute provides:

"The term 'corporations' as used in this act shall be construed to include all associations, part-

nership associations and joint stock companies having any of the powers or privileges of corporations, not possessed by individuals or partnerships, under whatever term or designation they may be defined and known in the State where organized." 2 Comp. Laws 1915, § 9071 (see Act No. 327, Pub. Acts 1931, § 97).

In *Attorney General* v. *McVichie,* 138 Mich. 387, *quo warranto* was instituted against a partnership. association, limited, it being contended it was a corporation. It is said:

"Certain provisions of the Constitution are made applicable to 'all associations and joint stock companies, having any of the powers or privileges of corporations, not possessed by individuals or partnerships.' See Const. (1850), art. 15, § 11. But it does not follow that the term 'corporation,' as thereafter used in legislation, must in every instance be so comprehensively construed. Had the Constitution makers so intended, they could easily have said so, and the fact that the provision was limited to the term as used in the preceding sections indicates a contrary intention."

In *Whitney Realty Co.* v. *Secretary of State,* 220 Mich. 234, the question arose whether plaintiff was entitled, under Act No. 85, Pub. Acts 1921 (2 Comp. Laws 1929, § 10136 *et seq.*), to a blank from the secretary of State on which to make an annual report. In construing this act, the court said:

"It relates to corporations, nothing else. Within itself there is no room for inference that it was intended to apply to partnership associations."

The secretary of State relied upon *Staver & Abbott Manfg. Co.* v. *Blake,* 111 Mich. 282 (38 L. R. A. 798); *Armstrong* v. *Stearns,* 156 Mich. 597, 604; *Union Trust Co.* v. *Detroit Common Council,* 170

Mich. 692; *Rouse, Hazard & Co.* v. *Detroit Cycle Co.,* 111 Mich. 251 (38 L. R. A. 794), and Act No. 84, Pub. Acts 1921 (2 Comp. Laws 1929, § 9943 *et seq.*). The court relied upon *Attorney General* v. *McVichie, supra,* where it was contended a partnership association was a corporation, and quoted with approval the language above quoted and added:

"The holding is controlling on this branch of the case. The cases cited are instructive, distinguishable, and not decisive of the question presented."

In *Nedeau* v. *United Petroleum,* 251 Mich. 673, this court reviewed the constitutional and legislative provisions relating to corporations, and held the Beaver Oil Company was not created by statute but constituted a common-law trust, but was within the provisions of Act No. 233, Pub. Acts 1923, which amended Act No. 85, Pub. Acts 1921, which later statute provided:

"The term 'corporation' as used in this act shall be deemed to include partnership associations, limited, whether domestic or foreign, all joint stock associations having any of the powers of corporations, and *such common-law trusts or trusts created by statute of this or any other State or country exercising common-law powers in the nature of corporations,* in addition to such other corporations as are referred to in this act." 2 Comp. Laws 1929, § 10138.

The language of this decision clearly indicates the distinction between a common-law trust and a corporation, but upholds the legislative power to make the corporation law relative to the filing of annual reports applicable to such common-law trusts. The Herpolsheimer Company, a common-law trust, was not a corporation. Even though the Herpolsheimer Company, a common-law trust, was a corporation

and had failed to make annual reports and was doing business in violation of law and the subject-matter of the lease was in furtherance of that business, in violation of the law and void, this would not necessarily render the lease void at the present time. December 21, 1923, the common-law trust ceased to exist, and its property and rights were transferred to the Herpolsheimer Company, a corporation. The Herpolsheimer Company, a corporation, continued to occupy the premises, to recognize the validity of the lease, to pay the monthly instalments of rent as they fell due, and the lessors' personal representatives continued to receive and receipt for the rental paid. This amounted to an adoption of the lease by the Herpolsheimer Company and the personal representatives of the lessor.

"Adoption should be used to apply to void transactions and ratification should be limited to voidable transactions. In all of the cases referred to, however, the parties were denied relief because they had accepted the benefits of the contracts, whether void or voidable, with full knowledge of the facts and at a time when the party so accepting was under the law fully competent and capable of contracting for himself. It therefore does not matter whether the transaction be referred to as an adoption, ratification, or estoppel, as the effect of these holdings, taken together, is to prevent a party from asserting the invalidity of a contract, when such party has accepted the benefits of the contract with the full knowledge of the facts." *Carlisle* v. *National Oil & Development Co.*, 108 Okla. 18 (234 Pac. 629).

See, also, *Wulfing* v. *Armstrong Cork Co.*, 250 Mo. 723 (157 S. W. 615); *St. Louis Union Trust Co.* v. *Chicot County Cotton-Alfalfa Farm Co.*, 127 Ark. 577 (193 S. W. 69); *Louisville, etc., R. Co.* v. *Carson,*

151 Ill. 444 (38 N. E. 140); *West Side Oil Co.* v. *McDorman* (Tex. Civ. App.), 244 S. W. 167.

If the lease of 1919 was valid, the question is presented whether the parties had a right to extend the period of its operation as provided therein. The 10-year lease signed by William G. Herpolsheimer provided for the occupation of the premises, the payment of taxes and assessments levied against the property, the payment of rent by the lessee, repairs and repossession on default by the lessee. It provided:

"For the considerations aforesaid, party of the second part is hereby granted the option, to be exercised in writing at least six months prior to said 10-year term, of extending this lease for an additional term of 10 years, on the same terms and conditions, excepting that the cash rental to be paid for said additional term shall be $30,000 annually, instead of $24,000 as above."

William G. Herpolsheimer and his personal representatives were bound by this option. It was, upon the part of the lessor and his personal representatives, a continuing offer. When it was accepted by the lessees, as provided in the lease, it became a valid and binding contract of lease for an additional period of 10 years. It was so accepted by the Herpolsheimer Company. The lessees' duty was performed and the obligations of the lease became binding upon it and upon the personal representatives of the lessor upon the exercise of the option contained in the original lease according to its terms. The lease was valid and binding in its inception. It was accepted, adopted, ratified, and approved by the Herpolsheimer Company, a corporation, and became a valid, subsisting lease between the personal representatives of William G. Herpol-

sheimer and the Herpolsheimer Company, a corporation. It was extended in a legal manner, and is now a valid and subsisting lease between the Herpolsheimer Company, a corporation, and the personal representatives of William G. Herpolsheimer. Decree affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred with POTTER, J. WIEST and BUTZEL, JJ., concurred in the result.