ROSSMAN *v.* MARSH.*

MORTGAGES—DEFICIENCY—TRUSTS—ASSUMPTION OF LIABILITY.
  In suit to foreclose a mortgage on a real estate subdivision and for deficiency against members of a so-called syndicate, who were beneficiaries under a declaration of trust but who had not expressly assumed payment of the mortgage, decree denying deficiency decree against beneficiaries is affirmed by an equally divided court.

Appeal from Jackson; Simpson (John), J. Submitted October 12, 1938. (Docket No. 61, Calendar No. 40,081.) Decided February 2, 1939. Submitted on rehearing April 4, 1939. Decided June 5, 1939.

* See opinions on rehearing, *post,* 720.—REPORTER.

Bill by R. H. Rossman, receiver of Union & Peoples National Bank, against Howard R. Marsh and others to foreclose a mortgage on a real estate subdivision. Separate cross-bills by defendants Theodore A. Hemminger, Robert Rumler and Mae E. Garfield and others against codefendants Howard R. Marsh and others for subrogation and other relief. From decree of foreclosure, appointing successor trustee, and denying deficiency against any of defendants except successor trustee, and granting cross-plaintiffs rights to release of lots upon payment of amount required by mortgage, plaintiff appeals. Defendants Town, Marsh, Hackett, Brown, Dunkerley, Cooley, Rumler, Hemminger, Detwyler, Huber, Parker, Kalmback, Bienick, and Garfield cross-appeal. Affirmed by an equally divided court on both original hearing and rehearing. Opinions on rehearing, *post,* 720.

*Elmer Kirkby* (*Whiting, Kleinstiver & Anderson,* of counsel), for plaintiff.

*William H. Aubrey,* for defendant Brown.

*Bisbee, McKone, Badgley & Kendall,* for defendants Marsh, Hackett, Dunkerley and Cooley.

*Leslie & Denton,* for defendant Town.

Bushnell, J. Plaintiff Rossman, receiver of the Union & Peoples National Bank, of Jackson, Michigan, filed a bill of complaint seeking a determination of the amount which he claimed the defendants owed the bank on a promissory note and indenture of mortgage. In the event of default in payment he sought foreclosure and sale with a deficiency judgment, if necessary. The original mortgagee was the National Union Bank of Jackson, whose name was changed to National Union Bank & Trust Company, which in turn consolidated with Peoples National

Bank in order to form the Union & Peoples National Bank. On August 23, 1927, John F. Hausen, as trustee, acquired title to certain platted real estate consisting of 420 lots in a subdivision in the county of Jackson, known as Hackett Park, except a number of lots which had already been sold. Hausen gave the bank a purchase-money mortgage in the maximum sum of $20,000 and interest, to secure the payment of moneys it had heretofore advanced or would thereafter advance. The mortgage provided that:

"It is understood that upon payment of $150 we will release each lot as desired."

At the same time Hausen gave the bank a promissory note in the sum of $10,950. Both of these instruments were signed "John F. Hausen, Trustee." The note stated that it was secured by a certain indenture of mortgage, bearing date of August 23, 1927.

It is the claim of the receiver that this transaction originated in an option from the bank to Hausen, but this paper could not be found at the time of the trial, Hausen in the meantime having died. The mortgage contains no language indicating for whom Hausen was acting as trustee, nor does it contain a covenant to pay a sum certain. On August 30th, following the execution of the mortgage and note, Hausen executed a "Declaration and Agreement in Trust," in which he declared that he held title to the land described in the mortgage for the benefit of himself and eight others named therein and that the beneficiaries had subscribed varying amounts to the total of $16,000, and that their beneficial interests were in proportion to the amounts they had contributed. The trust agreement stated that the land therein described was subject to a $20,000 mortgage running to the National Union Bank of Jackson. No

other signatures appear on the trust agreement except that of Hausen, trustee. This recorded instrument, together with an undated subscription agreement, was received in evidence, the admission of the latter being only for the purpose of affecting the interest of Hausen.

The trust agreement is of sufficient importance to quote in full. It reads as follows:

"This indenture, made this 30th day of August, 1927, witnesseth:

"That I, John F. Hausen, of the city and county of Jackson and State of Michigan, hereby make the following declaration and agreement in trust for the benefit of the *cestuis que trustent* hereinafter mentioned, to-wit: Howard R. Marsh, E. O. Marsh, Thomas E. Hackett, Horatio A. Brown, Susan A. Hausen, John F. Hausen, Arthur S. and Anne E. Dunkerley, and Don Town.

"I declare that I hold title to a certain parcel of land known as the east 77 acres of the east half of the northeast quarter of section number 32, town 2 south, range 1 west, consisting of 420 lots known as Hackett Park, excepting therefrom 48 lots which have been sold, numbered as follows: Lots 40 to 52, both inclusive; lots 131 to 136, both inclusive; lots 320 to 328, both inclusive; lots 239 to 244, both inclusive; lots 329 to 334, both inclusive; lots 414 to 420, both inclusive; lots 343 and 344, all according to the recorded plat thereof. Subject to the rights of way of the public highways as at present located. Deducting the 48 lots from the 420 lots, leave 372 lots, subject to a mortgage of $20,000 running to the National Union Bank of Jackson, Michigan, which mortgage is a five-year mortgage and dated August 22, 1927, and was a purchase-money mortgage.

"The title of the above described property subject to said mortgage is in my name as trustee for the benefit of subscribers, to-wit: The *cestuis que trust-*

*ent* above mentioned and is proportionate to the amount that each contributed to the fund which is represented by the subscription agreement for the purchase and development of the property.

"The names of the *cestuis que trustent* and the amounts subscribed by each are as follows:

| "Names. | Amounts Subscribed. |
|---|---|
| "Howard R. Marsh | $4,000 |
| "E. O. Marsh | 1,000 |
| "Thomas E. Hackett | 1,500 |
| "Horatio A. Brown | 1,000 |
| "Susan A. Hausen | 1,500 |
| "John F. Hausen | 5,000 |
| "Arthur S. & Ann E. Dunkerley | 1,000 |
| "Don Town | 1,000 |
| | $16,000 |

"I agree to and with the *cestuis que trustent* to sell and convey in my name as trustee, the above described lots as purchasers are found for them, and at such price or prices and upon such terms and conditions as may be agreed upon in writing by a majority in interest of said *cestuis que trustent* and this is on the understanding and agreement 'that I may expend as such trustee any funds in my hands from time to time in order to preserve and care for the trust estate, and in order to meet any obligations that I may have incurred as such trustee and that I may when in my judgment it is advisable, borrow money as such trustee or mortgage the trust estate in my hands, it being understood that the moneys resulting from such loans if any shall become part of the trust estate.

"It is further understood and the condition of this declaration of 'trusts' is that as the same may become necessary and in the interests of said trust and the beneficiaries thereof, that I may accept other contributions from the same or other contributors, and that such contributors shall thereupon become

entitled, upon their paying to me as trustee, the funds thus subscribed, to his, her, or its proportionate benefit as hereunder determined in said trust property, and that such contributors shall be bound by the obligations hereof to the same extent and effect as though they had been the original contributors.

"It is contemplated that the mortgage will be paid off by the sale of the lots and I have issued simultaneously with this declaration of trust to each of the subscribers a certificate of trust which certificate may be sold, assigned or disposed of, but subject in all respects to the terms and conditions of this trust declaration.

"I further declare that of the $16,000 coming into my hands as trustee that $10,000 has been paid on the purchase price of the property above herein mentioned and described and that $2,000 has been paid me for the transfer to the subscribers of the option held by me of the lands herein above described and for the time and effort which I had made in declaring the option and for the time which will be required of me in superintending the development, cleaning up of the property, restaking the lots, building roads and my compensation as trustee, and the balance of $4,000 is to be expended and used by me as trustee for paying the bills which will be incurred in developing, cleaning up the property, restaking the lots and building roads and in paying the interest on the mortgage and taxes and charges on the property and in carrying it to a point where the revenue from the sale of lots it is expected will take care of the expenses.

"It is understood that as trustee I shall have the right to pay reasonable commission to brokers and others who are instrumental in finding purchasers for the property, and I further agree to see that meetings of the beneficiaries of this trust are held from time to time; that accurate books of account

are kept, showing the receipts and disbursements of all moneys belonging to the trust and that when the trust has been discharged and finished that I will completely and fully account to all of the *cestuis que trustent* for all things done by me in effecting my trust.

"In witness whereof, said John F. Hausen has hereunto, as such trustee, set his hand and seal the day and year first above written.

"John F. Hausen, Trustee."

In furtherance of the provision requiring that lots be sold at a price and upon conditions agreed upon by a majority of the beneficiaries, a supplemental declaration was executed by seven of the original beneficiaries on February 18, 1928, in which was stated in detail the minimum prices at which various lots were to be sold. This agreement also provided that the trustee should receive 20 per cent. of the sale or resale price of each lot and that he might use his discretion as to terms of payment of such sales, including the rate of interest to be charged. Neither the original trust agreement nor the supplemental declaration contains any language indicating an assumption of the purchase-money mortgage or the participation of the beneficiaries in any deficiency liability.

Plaintiff's theory of the case is stated as follows:

"*Mr. Kleinstiver:* I think I stated this morning, it is our claim that this instrument does not constitute a trust, that it creates a relationship of the parties arising out of it which is one of three things; it is either a copartnership, a joint adventure or it is joint ownership with agency, and as to which of the latter three it might be, in so far as this case is concerned, that exact relation of those three is not material because their liabilities in respect to this note would be the same, whether it may be partnership or joint adventure or joint ownership."

Although separate defenses were made by some of the defendants, all of them disputed their liability as copartners, joint adventurers or joint owners coupled with an agency, and they unite in claiming that, because the so-called Hackett Park Syndicate was a common-law trust, no deficiency liability could be asserted against them as beneficiaries.

The trial judge's opinion pointed out that the beneficiaries did not assume and agree to pay the mortgage, and the trust instrument contemplated that the mortgage was to be paid off by the sale of the lots. The court said that the plaintiff was therefore precluded from securing a deficiency decree.

The various questions raised by the several briefs can be disposed of by a determination of the nature of the trust instrument and the mortgage transaction. The mortgage of the lands and the creation of the syndicate must be regarded as parts of a single plan. *Sagendorph* v. *Lutz*, 286 Mich. 103, 108. The subscribers' liability for deficiency on the mortgage depends upon whether or not they intended to assume the obligation or took the adequate steps to protect themselves against the imposition of such liability. Defendants insist that they did not assume an obligation to pay a mortgage deficiency and that the nature of their agreement precluded the imposition of such liability. They claim a common-law trust was created.

Common-law trusts are neither unknown in this State nor forbidden by statute. See *Nedeau* v. *United Petroleum Co.*, 251 Mich. 673, and *Michigan Trust Co.* v. *Herpolsheimer*, 256 Mich. 589. Bogert, in his work on Trusts and Trustees, vol. 2, § 295, makes the following observation:

"The Michigan Supreme Court has said: 'These entities come to this State masquerading as "pure

trusts." * * * It is the duty of this court to look beyond the form to the substance, to strip them of their finery and to apply the constitutional and statutory definition of corporations to them.' (*Hemphill* v. *Orloff*, 238 Mich. 508 [58 A. L. R. 507]). But thus far it has not been indicated that this reasoning involves a denial of limited liability, and the most recent pronouncement (*Michigan Trust Co.* v. *Herpolsheimer,* 256 Mich. 589) of the Michigan court reveals a much less hostile attitude toward business trusts."

There are two lines of authority, one of which holds that the shareholders of a business trust are liable as partners or joint adventurers, and the other which sanctions limited liability without formal incorporation. See annotation, 71 A. L. R. p. 890. Consideration of the *Nedeau* and *Herpolsheimer Cases, supra,* and previous annotations therein cited, indicate that in this State shareholders in a common-law trust enjoy the privileges of limited liability, although this question was not specifically decided. This conclusion may be inferred from the statute, 2 Comp. Laws 1929, § 10138 (Stat. Ann. § 21.203), which, in fixing the franchise fees of domestic and foreign corporations, provides that:

"The term 'corporation' as used in this act shall be deemed to include partnership associations, limited, whether domestic or foreign, all joint stock associations having any of the powers of corporations, and such common-law trust or trusts created by statute of this or any other State or country exercising common-law powers in the nature of corporations, in addition to such other corporations as are referred to in this act."

If, then, a business trust with limited liability is possible in Michigan, did the agreement between the

defendants create such trust? As was said in *Frost* v. *Thompson,* 219 Mass. 360 (106 N. E. 1009):

"A declaration of trust or other instrument providing for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property may create a trust or it may create a partnership. Whether it is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created; but if they are subject to the control of the certificate holders, it is a partnership."

The agreement consists of an original and supplemental declaration which, because of their terms, must be read together. In the first, the subscribers gave the trustee broad and general powers of management, independent of control by the beneficiaries except that the property was to be sold "at such price or prices and upon such terms and conditions as may be agreed upon in writing by a majority in interest of said *cestuis que trustent.*" In the second, this control was limited to the establishment of a minimum price and the parties said:

"This declaration when executed by a majority of the *cestuis que trustent* shall constitute and be deemed an expression and declaration by us of the price or prices and the terms and conditions upon which said lots are to be sold and shall be treated and considered as full and complete declaration and expression from us and as vesting in the said John F. Hausen, trustee, the right to sell said lots at the minimum price or prices above mentioned on such terms of payment and rates of interest as may be satisfactory to him, the said trustee."

The problem is whether or not retention by the subscribers of the right to set a minimum price constituted such control over the operation of the trust as to destroy its existence. Magruder, in "The Position of Shareholders in Business Trusts," 23 Columbia Law Review, pp. 423, 430, said:

"It is submitted that certain powers may properly be reserved to the certificate holders consistent with the erection of a genuine trust and the consequent personal immunity of the *cestuis que trustent;* that the existence of such powers is purely a matter of internal management; that if the law will give effect to the declared intention of the parties to set up the trustees as principals, with attendant personal liability, creditors will have no complaint and no proper concern with provisions of the declaration of trust affecting only the trustees and the shareholders *inter se.* It is further submitted that the decision as to the effect of any particular reserved power in the shareholders is not foreordained in the legal nature of things, but will depend chiefly on whether the court looks upon the business trust device with benevolent or hostile eyes; and whichever way the decision goes, respectable legal analogy will be available to sustain the result."

Control of minimum sale price alone was insufficient to destroy the operation of the trust or to make the trustee an agent of the certificate holders. See *Goldwater* v. *Oltman,* 210 Cal. 408 (292 Pac. 624, 71 A. L. R. 871, 881).

We agree with the result reached by the trial judge and hold that a common-law trust was created and that the beneficiaries cannot be held personally liable for any deficiency that may result from the foreclosure of the mortgage and the sale of the property.

Trustee Hausen died April 11, 1935, and no successor was appointed in his place. After the case

was concluded and prior to the entry of a decree the court appointed a successor with the same powers and duties as the original trustee and, in the decree, ordered his appearance entered as a party defendant.

The cross-appeal of the defendants raises the question of the power of the court to impose liability upon the successor trustee. It is claimed that this portion of the decree is "contrary to any proper conception of due process of law," but the briefs are silent as to any authority in support of this statement. A successor trustee, appointed by a court in chancery, succeeds to all the powers and duties of the original trustee, and he takes title to the trust property subject to the same conditions and equities to which it was subject in the hands of the original trustee. 3 Comp. Laws 1929, § 12990 (Stat. Ann. § 26.74); 65 C. J. pp. 1100, 1101, § 1052; *Bisbee* v. *Mackey,* 215 Mass. 21 (102 N. E. 327).

We have heretofore quoted a portion of 2 Comp. Laws 1929, § 10138 (Stat. Ann. § 21.203), with respect to the franchise fees of domestic and foreign corporations. The question of payment of such fees by the common-law trust, of which Hausen was trustee, is not raised and, therefore, no determination of this phase of the matter is necessary.

The decree of the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and SHARPE and McALLISTER, JJ., concurred with BUSHNELL, J.

WIEST, J. I cannot concur in the opinion of Mr. Justice BUSHNELL.

The defendants were joint adventurers. John F. Hausen held an option for the purchase of real estate. The other defendants became interested and advanced money to enable him to exercise the option

and acquire the property for his and their joint benefit. Here was a special association of several persons in a single venture, seeking profit without actual partnership or corporate entity, but as joint adventurers.

Mr. Hausen made a declaration of rights, and the other adventurers joined in an article to some extent in control of Mr. Hausen's management. As joint adventurers, except the married women, they are liable for deficiency under foreclosure of the purchase-price mortgage. *Polk* v. *Chandler*, 276 Mich. 527.

The decree in the circuit court should be reversed and one entered here in accordance with this opinion.

POTTER, CHANDLER, and NORTH, JJ., concurred with WIEST, J.