HENDERSON v SPROUT BROTHERS, INC

Docket No. 98532. Submitted October 5, 1988, at Lansing. Decided January 9, 1989.

On February 15, 1980, Michael Bidwell, Brian Bartley and David L. Sutton executed articles of incorporation for Sprout Brothers, Inc., which articles were accepted and filed by the Department of Commerce on March 17, 1980. On February 17, 1980, the three individuals signed a promissory note and a chattel mortgage reflecting a security interest in two sprout-growing machines purchased from Walter J. Henderson. The three individuals also executed a royalty agreement typed on Sprout Brothers, Inc.'s letterhead and fixing terms for future purchases by Sprout Brothers. Henderson brought an action against Sprout Brothers and the three individuals in the Ingham Circuit Court for payment of the balance of the purchase price of the machines, for payment of royalties due and for return of the machines. Bidwell, who was the only individual defendant served with process, counterclaimed, alleging breach of warranty and misrepresentation. The court, Thomas L. Brown, J., granted summary disposition to Sprout Brothers on plaintiff's claims, holding that Sprout Brothers did not exist in law at the time the sale and royalty agreement were entered into and could not be held responsible, and to Bidwell on plaintiff's claim for royalties, holding that plaintiff's deposition showed that plaintiff had transferred his right to receive royalties to a third party. The remaining claims of plaintiff and defendant Bidwell were submitted for mediation. An evaluation was returned on plaintiff's claim in one amount and on Bidwell's counterclaim in another amount. Plaintiff filed a response to the evaluation accepting the award for his claim but rejecting the award for Bidwell's counterclaim. The court held that plaintiff's response was to be deemed an acceptance of the entire evaluation and entered a judgment for the net difference. Plaintiff appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, New Topic Service, Alternative Dispute Resolution § 10.
See Index to Annotations under Alternative Dispute Resolution.

1. A response to a mediation evaluation which purports to accept an award against a party and reject an award to that party on a counterclaim operates as an acceptance as to the award in its entirety. Judgment on the mediation evaluation was properly entered.

2. The court did not err in granting judgment against plaintiff on his claim for royalties. Plaintiff admitted in his deposition that he had transferred the rights to the royalties to a third party.

3. The court erred in granting summary disposition to Sprout Brothers on the claims for payment of the balance of the purchase price and for return of the machines. There was a question of fact as to whether on February 26, 1980, Sprout Brothers was a de facto corporation. However, the error did not require reversal since the liability of Sprout Brothers could be no greater than or different from that of Bidwell and, since the court did not err in deeming plaintiff to have accepted the mediation evaluation, plaintiff would be entitled to no more damages.

Affirmed.

McDONALD, P.J., dissented in part. He agreed with the majority's construction of the court rules on responses to mediation evaluation but would hold the construction operated prospectively only. He would reverse.

PRETRIAL PROCEDURE — MEDIATION — RESPONSES TO MEDIATION EVALUATIONS — COURT RULES.

A response to a mediation evaluation which purports to accept an award against a party and reject an award to that party on a counterclaim operates as an acceptance as to the award in its entirety; judgment on the mediation evaluation was properly entered (MCR 2.403[K][2], 2.403[L][1], 2.403[L][3][a]).

*Barry L. Lippitt, P.C.* (by *Barry L. Lippitt*), for plaintiff.

*Oade & Stroud, P.C.* (by *Ted W. Stroud*), for defendants Sprout Brothers, Inc., and Michael Bidwell.

Before: McDONALD, P.J., and WAHLS and R. TAHVONEN,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. On September 24, 1986, the Ingham Circuit Court granted summary disposition to defendant Sprout Brothers, Inc., on counts one, three and four of plaintiff's second amended complaint and to defendant Michael Bidwell on count three of the complaint. The September 24, 1986, order reflected the court's decision announced after oral arguments were presented at an August 6, 1986, hearing. On January 21, 1987, the court entered a judgment conforming to the provisions of a September 18, 1986, mediation evaluation. On appeal, plaintiff, Walter J. Henderson, argues that the circuit court erred in entering a judgment based on the mediation evaluation, in granting summary disposition to Sprout Brothers, Inc., and to Bidwell on count three of the second amended complaint, and in granting summary disposition to Sprout Brothers, Inc. on counts one and four of the complaint. We find that it was proper to enter a judgment based on the mediation evaluation and that defendants were entitled to summary disposition on count three of plaintiff's complaint. We also find that the circuit court erred in granting summary disposition to Sprout Brothers, Inc., on counts one and four of plaintiff's complaint, but conclude that that error does not require us to reverse the judgment entered on January 21, 1987, by the circuit court. Accordingly, we affirm that judgment.

The record reveals that plaintiff, a Texas resident who invests in various businesses, was a limited partner in a California business, Sprout Gardens of California. On February 26, 1980, plaintiff sold for $27,500 two of Sprout Gardens' three-drum, sprout-growing machines to Michael Bidwell, Brian Bartley and David L. Sutton. These three individuals had executed articles of incorporation on February 15, 1980, for their new com-

pany, Sprout Brothers, Inc. On March 17, 1980, the company's articles of incorporation were accepted and filed by the director of the Michigan Department of Commerce. On February 26, 1980, each of the three individuals signed a promissory note for payment to plaintiff of $17,500, plus ten percent interest. In addition, each of the three individuals signed a chattel mortgage reflecting plaintiff's $17,500 security interest in the sprout-growing machines. The line on the chattel mortgage for the signature of the president of Sprout Brothers, Inc., remained unsigned. Moreover, a royalties agreement was also signed by each of the three individuals in which they promised to pay plaintiff "20% of profits in excess of $50,000 on a yearly basis." This royalties agreement was typed on the letterhead of Sprout Brothers, Inc., and noted that "[a]ll future equipment purchased by Sprout Bros., Inc., Lansing, Michigan, for the use of Sprout Bros., Inc., . . . from Walter J. Henderson, Dallas, Texas, will be at dealer cost F.O.B., Dallas, Texas." Finally, two of the three individuals, Bidwell and Bartley, each delivered a check for $5,000 to plaintiff as a down payment on the sprout-growing machines.

Following the sale of the equipment, disputes arose and, apparently, plaintiff received no further payments. Plaintiff sued Sprout Brothers, Inc., and each of the three individuals with whom he had dealt. Brian Bartley and David L. Sutton were never served with process, however, and, accordingly, were not subject to the circuit court's jurisdiction. Bidwell, who was served, filed a counterclaim against plaintiff, alleging breach of warranty and misrepresentation. On August 6, 1986, after oral arguments were presented, the circuit court decided to grant summary disposition to Sprout Brothers, Inc., on plaintiff's claim for payment of

the purchase price balance, payment of royalties due, and return of the sprout-growing machines, and to Bidwell on plaintiff's claim for payment of royalties due, concluding that plaintiff himself, in a deposition, had revealed that he had earlier transferred to a third party his right to receive any royalties. This decision was reflected in a September 24, 1986, order.

In September, 1986, plaintiff's claim against Bidwell for payment of the purchase price balance of $17,500 and Bidwell's counterclaim were submitted for mediation. The mediation panel evaluated plaintiff's claim as worth $13,700, and Bidwell's counterclaim as worth $17,000. Bidwell made no response to the evaluation, and thus was deemed to have accepted it. Plaintiff filed a response to the evaluation, accepting the award for his claim but rejecting the award for Bidwell's counterclaim. On December 5, 1986, Bidwell filed a motion requesting entry of a judgment in conformity with the mediation evaluation, arguing that plaintiff's partial acceptance and partial rejection of the evaluation was to be deemed an acceptance of the evaluation under MCR 2.403(L)(1). After oral arguments were presented at a December 23, 1986, hearing, the circuit court decided in favor of Bidwell and, on January 21, 1987, entered a judgment in favor of Bidwell in the amount of $3,300, that amount representing the difference between the $13,700 owing to plaintiff and the $17,000 owing to defendant under the terms of the mediation evaluation.

On appeal, plaintiff first argues that the circuit court erred by entering judgment in conformity with the mediation evaluation. Emphasizing that the court rule which sets forth the procedures for mediation does not specify the manner of response required in a situation involving a claim and a counterclaim, plaintiff contends that his accep-

tance of the $13,700 mediation award on his claim and his rejection of the $17,000 award on Bidwell's counterclaim constituted a proper response to the mediation evaluation or, if an improper response, a rejection of that evaluation. Bidwell, on the other hand, asserts that plaintiff's partial acceptance and partial rejection of the mediation evaluation was an improper response to the evaluation and was correctly deemed by the circuit court to be an acceptance.

MCR 2.403 governs the mediation process. In subparagraph (K)(2) it was stated that a mediation evaluation "must include a separate award as to each . . . counterclaim . . . that has been filed in the action." The evaluation in this case complied with this requirement by including separate awards regarding plaintiff's claim and Bidwell's counterclaim. In subparagraph (L)(1) it is further stated that "[e]ach party must file a written acceptance or rejection of the panel's evaluation with the mediation clerk within 28 days after service of the panel's evaluation," and that "[t]he failure to file a written acceptance or rejection within 28 days constitutes acceptance." Subparagraph (L)(3)(a) specifically provides that, in mediations involving multiple parties, "[e]ach party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others," but that, "as to any particular opposing party, the party must either accept or reject the evaluation in its entirety."

It is clear that, at the time plaintiff filed his response to the mediation evaluation, only he and Bidwell remained as parties, Sprout Brothers, Inc., having earlier been declared entitled to summary disposition by the circuit court, and Brian Bartley and David Sutton never having been served with process. Thus, subparagraph (L)(3), which concerns

mediations involving multiple parties, was inapplicable. Had it been applicable, plaintiff would have been constrained either to accept or to reject the evaluation in its entirety, i.e., he would have been obligated to accept the mediators' awards on both the claim and the counterclaim or to reject the awards on both the claim and the counterclaim. He could not, as he attempted to do, accept the award on the claim and reject the award on the counterclaim.

However, since subparagraph (L)(3) is inapplicable, we must apply subparagraph (L)(1). That provision, as plaintiff reminds us on appeal, does not specify the manner of response in situations involving a claim and a counterclaim. "Without specific direction as to the manner of response," plaintiff's appellate brief states, "[plaintiff], reasonably, chose to respond to each award." We disagree.

In situations not concerning multiple parties, there is no provision in the mediation rule that allows a party to accept part of a mediation evaluation while rejecting the rest of it. The purpose of the mediation rule is to expedite and simplify the final settlement of cases. *Smith v Elenges,* 156 Mich App 260, 263; 401 NW2d 342 (1986). That purpose would clearly be frustrated if a party were permitted to split its response to a mediation evaluation so that, for example, it could accept a mediation award on its claim but reject an award on a defendant's counterclaim. Such a procedure would not necessarily expedite or simplify the final settlement of the case since only a portion of it would be settled, the remaining portion still requiring to be fully litigated. The same parties as settled concerning a part of the lawsuit would nevertheless have to go to court and litigate the balance of the lawsuit. A "final settlement," in

such an instance, can hardly be said to have resulted from the mediation process. Rather, at most, merely a partial settlement would have resulted, while the surviving portion of the case would continue to demand judicial attention. We agree with the observation of the circuit court:

> [A mediation evaluation] has to be accepted in its entirety or rejected in its entirety, otherwise [the mediation rule] doesn't make sense. The mediators simply can't operate under the circumstances where you reject part of it, settle for part of it. You have foiled the purpose of mediation by being given that ability.

As already mentioned, in situations involving multiple parties, a party must either accept or reject a mediation evaluation in its entirety as to any particular opposing party. We see no reason to deviate from this rule in situations involving only two parties.

Moreover, we find that the circuit court did not err in deeming plaintiff's partial acceptance and partial rejection of the mediation evaluation as an acceptance of the evaluation. The predecessor of the current mediation rule provided that the failure to timely file a written acceptance of a mediation evaluation constituted a rejection of the evaluation. GCR 1963, 316.6(h)(1). The current rule, of course, provides that the failure to timely file a written acceptance or rejection constitutes an acceptance. Commentators have cautioned that "counsel should take particular note of this rule change." 2 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 444. In the present case, plaintiff did not timely file a written acceptance or rejection of the mediation evaluation but, rather, a written acceptance and rejection of it. We conclude that, by doing so, he complied with

neither the letter nor the spirit of the mediation rule's response requirement and, under MCR 2.403(L)(1), was properly deemed by the circuit court to have accepted the evaluation. The evaluation having been properly deemed accepted by plaintiff and Bidwell, judgment in conformity with its assessments was appropriately entered by the circuit court.

Second, plaintiff argues on appeal that the circuit court erred in granting summary disposition to Sprout Brothers, Inc., and Bidwell, under MCR 2.116(C)(10), on count three of his complaint. In that count, plaintiff claimed entitlement to certain royalties promised in the February 26, 1980, royalties agreement. We disagree.

The standard for reviewing a circuit court's decision on a party's motion for summary disposition under MCR 2.116(C)(10)—there exists no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law—is well established:

Summary disposition pursuant to MCR 2.116(C)(10) is proper only if there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. *Hagerl v Auto Club Group Ins Co,* 157 Mich App 684, 686-687; 403 NW2d 197 (1987). A motion based on MCR 2.116(C)(10) tests the factual support for the claim. *Morganroth v Whitall,* 161 Mich App 785, 788; 411 NW2d 859 (1987). In ruling on the motion, the court must consider the pleadings, affidavits, depositions and other documentary evidence, and must give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a genuine issue of material fact. *Id.* Summary disposition is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which

cannot be overcome. *Id.* [*Jones v Farm Bureau Mutual Ins Co,* 172 Mich App 24, 26-27; 431 NW2d 242 (1988).]

A plaintiff's deposition testimony, given in a clear, intelligent and unequivocal manner, is binding in the absence of proper explanation, even though it contradicts allegations in the complaint. See *Stefan v White,* 76 Mich App 654; 257 NW2d 206 (1977); *Sumpter v Kosinski,* 165 Mich App 784, 800; 419 NW2d 463 (1988). In plaintiff's deposition in this case, he unambiguously testified that he had transferred to a third party his ownership of the right to receive royalties, and thus conceded that no royalties could be owed to him under the February 26, 1980, royalties agreement. In his deposition, plaintiff was asked and answered the following questions:

*Q.* Do you still own the royalty?

*A.* What royalty? I get royalty from oil, minerals.

*Q.* I'm sorry, excuse me. The royalty under this agreement.

*A.* No. I never did.

*Q.* Who owns that?

*A.* Lauren Zindel, the daughter of Bruce Zindel.

*Q.* You transferred it to her?

*A.* Sure did.

* * *

*Q.* Well, aren't you going to have an ongoing relationship with him anyway?

*A.* I wasn't going to, no.

*Q.* I thought you told me [about] some royalties.

*A.* No, better than that. They owed Bruce Zindel's daughter royalties.

*Q.* They never agreed to pay you royalties?

*A.* I agreed royalties were attached to the machine, but whenever I ever got down to it, I said

Bruce, I'm here and now giving royalties to your daughter before that note was signed when the negotiation was going on between them and then I gave it to Lauren Zindel.

*Q.* Was anyone else present during that conversation?

*A.* My wife. They know that royalty belongs to Lauren Zindel, not me. They know that.

*Q.* If it belongs to Lauren Zindel, then why are you suing them for it?

*A.* I'm not suing them for it.

In an attempt to avoid the consequence of this repudiation of any entitlement to royalties, plaintiff asserted in an affidavit that, in fact, he never transferred his interest in the royalties to Lauren Zindel. However, such a late-coming, obviously self-serving denial of facts previously declared with certainty and vigor does not constitute an adequate explanation or showing of mistake. We agree with the circuit court, which, in ruling on this issue, stated:

As to Count III of the second Amended Complaint, again, Mr. Henderson said what he said. It is his position at one point in time relative to the royalties, the Defendant Sprout Brothers, Inc., has proceeded on that basis.

Now at the eleventh hour, apparently, Mr. Henderson has had a change of heart. He is unfortunately burdened with those words of his uttered on some previous date.

Finally, plaintiff argues on appeal that the circuit court erred in granting summary disposition to Sprout Brothers, Inc., under MCR 2.16(C)(10) on counts one and four of his complaint. In those counts, plaintiff claimed entitlement to payment of $17,500, that amount being the balance of the purchase price for the two sprout-growing ma-

chines, and the return of the machines due to breach of contract. The circuit court, in granting the motion of Sprout Brothers, Inc., concluded that the corporation could not possibly be held responsible for payment of the unpaid portion of the purchase price because on February 26, 1980, the date the chattel mortgage, promissory note and royalties agreement were signed by Bidwell, Bartley and Sutton, Sprout Brothers, Inc., did not exist in law, its articles of incorporation not having been filed with the director of the Michigan Department of Commerce until March 17, 1980.

We agree with plaintiff that summary disposition was improvidently granted to Sprout Brothers, Inc., since we conclude that questions of fact exist regarding whether, on February 26, 1980, Sprout Brothers, Inc., existed as a *de facto* corporation, and whether the corporation ratified its incorporators' preincorporation contracts with plaintiff. The failure of incorporators to file articles of incorporation with the Michigan Department of Commerce does not necessarily preclude a finding that an entity exists as a corporation, for parties other than the state, prior to such filing. The Supreme Court has quoted with approbation the following language in a treatise on corporation law:

> When incorporators have proceeded in good faith, under a valid statute, for an authorized purpose, and have executed and acknowledged articles of association pursuant to that purpose, a corporation *de facto* instantly comes into being. . . . A *de facto* corporation is an actual corporation. As to all the world except the State, it enjoys the status and powers of a *de jure* corporation. [*Tisch Auto Supply Co v Nelson,* 222 Mich 196, 200; 192 NW 600 (1923), quoting Hamilton, Michigan Corporation Code (3d ed), § 83.]

In addition, a corporation may be liable on preincorporation contracts of promoters or incorporators if these contracts are ratified or adopted by the corporation. *Michigan Trust Co v Herpolsheimer,* 256 Mich 589, 598-600; 240 NW 6 (1932).

In the present case, there are many indications that plaintiff could support his claim regarding the de facto corporate status of Sprout Brothers, Inc., on February 26, 1980, and of the ratification or adoption by Sprout Brothers, Inc., of the contracts between himself and the three individuals with whom he dealt. The name of Sprout Brothers, Inc., is included, along with Bidwell, Bartley and Sutton, in the chattel mortgage held by plaintiff in the sprout-growing machines as a party "justly indebted to Walter J. Henderson." The royalties agreement signed by the three individuals and plaintiff is typed on letterhead of Sprout Brothers, Inc., and it is noted that "[a]ll future equipment purchased by Sprout Bros., Inc., . . . will be at dealer cost F.O.B., Dallas, Texas." Moreover, Bidwell opened a checking account for Sprout Brothers, Inc., on February 19, 1980, and the corporate records prepared by the corporation's accountants listed the debt to plaintiff as an obligation of the corporation.

Thus, we conclude that the circuit court erred in granting summary disposition to Sprout Brothers, Inc., on plaintiff's claims for payment of the balance of the purchase price of the two sprout-growing machines and the return of the machines due to breach of contract. Our finding of error, however, does not prompt us to reverse the circuit court's January 21, 1987, judgment because it is clear that the liability of Sprout Brothers, Inc.—assuming such derivative liability exists—could have been no greater or different than that of the liability of Bidwell. Put differently, plaintiff could

prove no additional damages in this case than those which were incurred as a result of the actions of Bidwell. Since we have already determined that the circuit court did not err in deeming plaintiff to have accepted the mediation evaluation regarding Bidwell's liability and in entering a judgment in conformity with that evaluation, we discern no purpose, from plaintiff's perspective, in remanding the case for a determination of the relative degrees of culpability of Bidwell and Sprout Brothers, Inc. Plaintiff would not be entitled to any more damages and would merely incur additional attorney fees.

Accordingly, we affirm the result reached by the circuit court.

McDONALD, P.J. *(concurring in part and dissenting in part).* I concur in part and dissent in part.

I have no disagreement with the majority's interpretation of the rule. However, since this is a case of first impression I would hold the interpretation applies to future cases only. The plaintiff did attempt to comply with the court rule in good faith and to treat his attempt as if he never acted and deprive him of his day in court is unjust.

Since we have held the trial court erred in dismissing Sprout Brothers, Inc., as a party, mediation would have occurred with multiple parties. Court rule 2.403(L)(3)(a) would apply as to acceptance or rejection of the evaluation and all parties may have acted differently pursuant to a less ambiguous rule.

I would reverse.