FETZ ENGINEERING COMPANY v ECCO SYSTEMS, INC

Docket No. 118712. Submitted November 15, 1990, at Detroit. Decided April 2, 1991, at 9:15 A.M. Leave to appeal sought.

Fetz Engineering Company brought an action for damages in the Oakland Circuit Court against Ecco Systems, Inc., and Ecco Systems filed a counterclaim. A mediation panel rendered an award of $13,000 in favor of the plaintiff and an award of $15,000 in favor of the defendant. The defendant accepted the mediation evaluation, but the plaintiff filed a response accepting the award in its favor but rejecting the award in the defendant's favor. The defendant moved for the entry of a judgment consistent with the mediation evaluation, arguing that the plaintiff's bifurcated response must be treated as an acceptance. The court, Steven N. Andrews, J., initially ruled against the defendant. On reconsideration, the court granted the motion in light of the Court of Appeals decision in *Henderson v Sprout Bros, Inc,* 176 Mich App 661 (1989), which had not been published at the time of the defendant's motion but was published following a request pursuant to MCR 7.215(0) by the time the trial court reconsidered its ruling. *Henderson* held that a response to a mediation evaluation which purports to accept an award against a party and reject an award to that party on a counterclaim operates as an acceptance of the evaluation in its entirety. The trial court entered a judgment of $2,000 in favor of the defendant and denied a subsequent motion by the plaintiff to set aside the judgment. The plaintiff appealed.

The Court of Appeals *held:*

*Henderson v Sprout Bros, Inc,* and its post-November 1, 1990, progeny, *Rowe v Lowry,* 186 Mich App 136 (1990), were wrongly decided. However, Administrative Order No. 1990-6, which governs the resolution of conflicts in Court of Appeals

REFERENCES

Am Jur 2d, Alternate Dispute Resolution § 10; Courts §§ 184, 186; Trial § 4.

See the Index to Annotations under Alternate Dispute Resolution; Courts; Precedents; Publication.

decisions, compels the Court of Appeals to follow *Rowe* and affirm the trial court's ruling.

1. Although MCR 2.403(L)(1) requires each party to accept or reject a panel's evaluation, the term "evaluation" is not defined, leaving it unclear in cases where there are awards on a plaintiff's claim and a defendant's counterclaim whether each award is an evaluation or whether only the combined sum of the awards is the evaluation. In its concern for judicial economy in the mediation process, the *Henderson* panel appears to have assumed that a counterclaim necessarily arises out of the same transaction or occurrence giving rise to the claim. That is not necessarily so. In situations where a counterclaim does not arise out of the same transaction or occurrence, judicial economy is certainly advanced by a separate disposition of either the claim or the counterclaim. Thus, the bifurcated response by the plaintiff in this case was reasonable in light of the ambiguity. In requiring that the evaluation in this case be accepted as a whole, a settlement is judicially imposed upon parties who clearly did not intend to settle. Such forced settlement is manifestly unjust and contrary to the purposes of the Michigan Court Rules, MCR 1.105, and were it not for Administrative Order No. 1990-6, the judgment entered in this case would be set aside as the product of mistake, inadvertence, surprise, or excusable neglect, MCR 2.612(C)(1).

2. The majority of the panel in *Henderson,* contrary to the partial dissent of Judge McDONALD, correctly determined that the decision in *Henderson* must be given retroactive application. A Court of Appeals decision, like that in *Henderson,* which interprets a court rule should be given full retroactive effect, even though the interpretation presented may involve a question of first impression.

3. The trial court did not err in entering one judgment representing the net recovery by the defendant instead of a judgment on the plaintiff's mediation award and a judgment on the defendant's mediation award. Even if the procedure were incorrect, no prejudice to the plaintiff would have resulted.

4. The trial court did not err in granting reconsideration of its denial of the defendant's motion for entry of judgment. A grant of reconsideration is highly appropriate where, as in this case, a trial court's initial ruling is rendered erroneous by a newly published decision of the Court of Appeals.

5. The defendant's motion for reconsideration was timely. Because the trial court had not entered an order after initially ruling against the defendant, the seven-day period in which a motion for reconsideration must be brought under MCR

2.119(F)(1) never commenced. Additionally, even if an order had been entered and the defendant's motion for reconsideration was untimely, the defendant could have renewed its motion for entry of judgment before trial in light of the new precedent.

6. The defendant did not raise frivolous objections to the plaintiff's proposed order denying the defendant's motion for entry of judgment so as to warrant imposing on the defendant a sanction in the form of treating the defendant's motion for reconsideration as untimely and reversing the grant of reconsideration.

7. The defendant, in requesting publication of the *Henderson* decision, complied with MCR 7.215(D) with respect to providing copies of its letter of request to each party involved in the *Henderson* appeal not joining in the request. The defendant was not required by court rule to serve a copy of its letter to the plaintiff or to other attorneys who might have had an interest in the *Henderson* decision. Even if the plaintiff had not complied with the requirements governing requests for publication, no authority exists which would allow the present panel of the Court of Appeals to rescind a decision by the *Henderson* panel to grant publication.

Affirmed.

1. PRETRIAL PROCEDURE — MEDIATION — ACCEPTANCE OR REJECTION OF AWARDS.

The rule that a response to a mediation evaluation which purports to accept an award against a party and reject an award to that party on a counterclaim operates as an acceptance of the evaluation in its entirety, which was based on the mediation court rule in effect from March 1, 1985, to March 31, 1990, judicially imposes a settlement upon parties who do not intend to settle and is manifestly unjust and contrary to the purposes of the Michigan Court Rules; however, under Administrative Order No. 1990-6, the rule must be followed as controlling authority for mediation cases arising during that period unless reversed or modified by the Supreme Court or a special panel of the Court of Appeals (MCR 1.105, 2.403[L][1]; Administrative Order No. 1990-6).

2. COURTS — COURT OF APPEALS — CONFLICTS IN COURT OF APPEALS DECISIONS.

A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, and the prior published decision remains controlling authority unless re-

versed or modified by the Supreme Court or a special panel of the Court of Appeals (Administrative Order No. 1990-6).

3. COURTS — COURT OF APPEALS — PUBLICATION OF OPINIONS UPON REQUEST.

Copies of a letter requesting publication of an unpublished opinion of the Court of Appeals must be provided to those parties to the appeal who do not join in the request for publication; there is no requirement that a copy be provided to any other person or attorney (MCR 7.215[0]).

4. COURTS — COURT OF APPEALS — PUBLICATION OF OPINIONS UPON REQUEST.

A panel of the Court of Appeals should refrain from rescinding another panel's grant of a request for publication of an unpublished opinion by that panel.

*D'Agostini, Sable & Ruggeri* (by *John F. Harrington*), for the plaintiff.

*Law Offices of Sullivan & Leavitt, P.C.* (by *Andrew J. Haliw, III,* and *Andrew W. Mychalowych*), for the defendant.

Before: GRIFFIN, P.J., and SAWYER and BRENNAN, JJ.

PER CURIAM. Plaintiff appeals from a judgment of the circuit court entered upon a mediation award on plaintiff's claim and defendant's counterclaim. We affirm.

Plaintiff brought the instant action against defendant, alleging breach of contract, account stated, quantum meruit, and unjust enrichment. Defendant filed a counterclaim, alleging breach of contract and breach of warranties, as well as claiming a setoff and incidental and consequential damages. The matter was submitted to a mediation panel, which rendered an award in plaintiff's favor in the amount of $13,000 on plaintiff's claim and entered an award in favor of defendant of $15,000 on defendant's counterclaim. Defendant

accepted the award, while plaintiff filed a response which purported to accept the $13,000 award in its favor and reject the $15,000 award in defendant's favor. Defendant thereafter filed a motion for entry of judgment, arguing that plaintiff's response should be considered an acceptance of the entire award. The trial court initially ruled against defendant, but thereafter granted reconsideration in defendant's favor in light of this Court's decision in *Henderson v Sprout Bros, Inc,* 176 Mich App 661; 440 NW2d 629 (1989). A motion by the plaintiff to set aside the judgment was later denied by the lower court.

I

Plaintiff first argues that the *Henderson* case was incorrectly decided by this Court and urges us to conclude, contrary to *Henderson,* that plaintiff was permitted to file a bifurcated response to the mediation evaluation. We agree, but affirm only because we are required to do so pursuant to Administrative Order No. 1990-6, 436 Mich lxxxiv.

In our view, *Henderson* and its post-November 1, 1990, progeny, *Rowe v Lowry,* 186 Mich App 136; 463 NW2d 110 (1990), were wrongly decided.[1] Nevertheless, because *Rowe* is binding precedent, we must follow it pursuant to Administrative Order No. 1990-6. We will, however, seek to convene a

---

[1] The lower court judge appears to concur with this conclusion. Honorable Steven N. Andrews initially denied the motion for entry of judgment, while *Henderson* was a nonbinding unpublished opinion, finding no meeting of the minds of the parties to accept the mediation evaluation in total. However, on rehearing after *Henderson* was published due, in part, to the efforts of defense counsel, Judge Andrews entered a judgment, ruling that "the Henderson decision [was] controlling, there being no reported decision to the contrary from another panel of the Court of Appeals nor from the Supreme Court of Michigan." He further stated: "I invite appeal."

special panel of the Court of Appeals to decide the issue which is common in all three cases.[2]

During a five-year period between 1985 and 1990, former mediation court rule, MCR 2.403(L) (1), provided that "[t]he failure to file a written acceptance or rejection within 28 days constitutes acceptance." The deemed acceptance for failure to respond was a change from GCR 1963, 316.6(H)(1), which had provided that the failure "to file a written acceptance within 20 days constitutes rejection." Effective March 31, 1990, the Supreme Court returned the rule to its former practice by amending MCR 2.403(L)(1) to state that "[t]he failure to file a written acceptance or rejection within 28 days constitutes rejection."

Additionally, effective March 31, 1990, the Supreme Court amended MCR 2.403(M)(1) by including a statement that acceptance of the mediation evaluation "shall be deemed to dispose of all claims in the action." Before March 31, 1990, MCR 2.403(M)(1) read as follows:

> If all the parties accept the panel's evaluation, judgment will be entered in that amount, which includes all fees, costs, and interest to the date of judgment.

Unchanged by the 1990 amendments is MCR 2.403(K)(2), which states:

> The evaluation must include a separate award as to the plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

---

[2] Pursuant to Administrative Order No. 1990-6, plaintiff may file such a petition within twenty-one days.

In the present case, plaintiff filed a timely mediation response which purported to accept the award on its claim but reject the award on defendant's counterclaim. We agree with *Henderson* and *Rowe* only to the extent that they hold that *if* plaintiff's mediation response were clearly improper, it should be treated as no response at all.

Plaintiff asserts that, because the mediation panel evaluated its claim against defendant separately from defendant's counterclaim, it was permitted under the court rule as it then existed to accept the mediation award on its claim and to reject the award on defendant's counterclaim. Plaintiff argues that the court rule, by requiring the rendition of separate awards, impliedly authorizes the acceptance or rejection of each such award. Furthermore, it is asserted that it would be a superfluous exercise for the mediation panel to evaluate plaintiff's claim separately from defendant's counterclaim if only the combined sum of the awards could be accepted or rejected. Although MCR 2.403(L)(1) requires each party to accept or reject the panel's evaluation, the term "evaluation" is not defined. Accordingly, it was unclear whether each award was an evaluation or whether only the combined sum of the awards was the evaluation.

At the time of mediation in the instant case, plaintiff's mediation response was reasonable in view of the inherent ambiguity of the court rule. Nevertheless, in the factually similar cases of *Henderson* and *Rowe,* our Court held that a bifurcated acceptance/rejection to separate mediation awards is improper and is to be treated as a nonresponse. The *Henderson* panel relied in large measure upon the judicial economy objective of the mediation process in construing the court rule:

In situations not concerning multiple parties, there is no provision in the mediation rule that allows a party to accept part of a mediation evaluation while rejecting the rest of it. The purpose of the mediation rule is to expedite and simplify the final settlement of cases. *Smith v Elenges,* 156 Mich App 260, 263; 401 NW2d 342 (1986). That purpose would clearly be frustrated if a party were permitted to split its response to a mediation evaluation so that, for example, it could accept a mediation award on its claim but reject an award on defendant's counterclaim. Such a procedure would not necessarily expedite or simplify the final settlement of the case since only a portion of it would be settled, the remaining portion still requiring to be fully litigated. The same parties as settled concerning a part of the lawsuit would nevertheless have to go to court and litigate the balance of the lawsuit. A "final settlement," in such an instance, can hardly be said to have resulted from the mediation process. Rather, at most, merely a partial settlement would have resulted, while the surviving portion of the case would continue to demand judicial attention. We agree with the observation of the circuit court:

"[A mediation evaluation] has to be accepted in its entirety or rejected in its entirety, otherwise [the mediation rule] doesn't make sense. The mediators simply can't operate under the circumstances where you reject part of it, settle for part of it. You have foiled the purpose of mediation by being given that ability." [*Henderson, supra* at 667-668.]

*Henderson* appears to assume that a counterclaim arises out of the same transaction or occurrence at issue in the principal complaint. A counterclaim, however, need not necessarily arise out of the same transaction or occurrence that forms the basis of the plaintiff's claim. See MCR 2.203. In situations in which the counterclaim does not arise out of the same transaction or occurrence, judicial

economy is certainly advanced by a separate disposition of either the plaintiff's claim or the counterclaim. See Martin, Dean & Webster, Michigan Court Rules Practice, Rule 2.403 (1990 supplement), authors' comment, p 76.

In the present case, like in *Henderson* and *Rowe,* a settlement through the mediation process was judicially imposed upon parties who clearly did not intend to settle. The overly technical construction of the mediation court rule used to force the settlement is not plainly evident from the language contained in the court rule at issue. The injustice occasioned is the very type which the Supreme Court sought to avoid by amending the court rule in 1990.

Because the operation of the court rule under these facts was unclear at the time plaintiff filed its mediation response, we should take cognizance of the spirit of the court rules as embodied in MCR 1.105:

> These rules are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties.

Forcing a judicial settlement in this instance is manifestly unjust and contrary to the purposes of the court rules as set forth in MCR 1.105.

Furthermore, the instant judgment which resulted from the application of the mediation court rule was clearly the product of "mistake, inadvertence, surprise, or excusable neglect." See MCR 2.612(C)(1)[3] and *Great American Ins Co v Old*

---

[3] MCR 2.612(C) provides:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

*Republic Ins Co,* 180 Mich App 508; 448 NW2d 493 (1989). Under the circumstances of this case, the judgment should have been set aside. We would hold that the lower court abused its discretion in denying plaintiff's motion to set aside the judgment.

Were it not for Administrative Order No. 1990-6, we would reverse.

II

Plaintiff's second argument is that we should adopt the view of Judge McDonald in his partial dissent in *Henderson,* in which he stated that he believed the *Henderson* decision should be given prospective effect only. *Id.,* at 674. Plaintiff urges us to follow Judge McDonald's dissent and conclude that *Henderson* and *Rowe* should not be applied to the case at bar because mediation, as well as plaintiff's response to the mediation evaluation, occurred before the decisions in *Henderson* and *Rowe.* We respectfully disagree with Judge McDonald on this issue.

The general rule in Michigan is that appellate court decisions are to be given full retroactivity unless limited retroactivity is justified. *Moorhouse v Ambassador Ins Co, Inc,* 147 Mich App 412, 420-421; 383 NW2d 219 (1985). While *Henderson* does appear to be a case of first impression, it did not announce a new rule of law or change existing law. Rather, it merely gave an interpretation of a preexisting court rule under facts which had not previously been the subject of an appellate court decision. This does not, however, justify applying

---

(a) Mistake, inadvertence, surprise, or excusable neglect.

\* \* \*

(f) Any other reason justifying relief from the operation of the judgment.

the decision prospectively only. Indeed, if that were a sufficient basis for applying a decision prospectively, the general rule of full retroactive effect would, in essence, be abandoned in light of the great number of cases of this Court which result in published opinions and consider interpretations of court rules or statutes not previously interpreted, or at least interpreted in the light of novel factual situations. The appropriate rule to follow is that a decision of the Court of Appeals which interprets a preexisting court rule should be given full retroactive effect, even though the interpretation presented may involve a question of first impression. Accordingly, we conclude that *Henderson* and *Rowe* should be given full retroactive effect and, therefore, are applicable to the case at bar.

III

Plaintiff next challenges the judgment entered by the trial court which ordered judgment in favor of defendant in the amount of $2,000, the net amount recovered by defendant under the mediation award once the award to plaintiff is subtracted from the award to defendant. Plaintiff argues that the judgment should have separately awarded $13,000 in favor of plaintiff and $15,000 in favor of defendant, rather than merely granting judgment for the net amount. We disagree. First, we note that this procedure was employed in *Henderson, supra* at 665. Second, even assuming that plaintiff is technically correct that the judgment should have separately listed the amounts, we fail to see what possible prejudice resulted to plaintiff by the trial court entering a judgment for the net amount.

IV

Next, plaintiff argues that the trial court incorrectly granted defendant's motion for reconsideration because the appropriate prerequisites for a grant of reconsideration were not met. Specifically, plaintiff argues that defendant did not plead that there were the appropriate grounds for reconsideration, namely, palpable error, that the court had been misled, or that a different disposition should be had. See MCR 2.119(F)(3). Plaintiff further argues that the mere fact that a previously unpublished opinion of the Court of Appeals has become published is not so persuasive as to meet the requirements for a grant of reconsideration. With this proposition, we must strenuously disagree.

Plaintiff's reliance on MCR 2.119(F)(3) is misplaced. As this Court discussed in *Michigan Bank-Midwest v D J Reynaert, Inc,* 165 Mich App 630, 645-646; 419 NW2d 439 (1988), the "palpable error" requirement of MCR 2.119(F)(3) merely provides guidance to the trial court in deciding reconsideration motions and does not operate to restrict the trial court's discretion in determining whether a grant of reconsideration is appropriate in a particular case. This brings us to the next point, namely, whether the publication of a decision by this Court, which affects the correctness of the trial court's earlier ruling, is sufficient grounds for a grant of reconsideration. Contrary to plaintiff's suggestion, we conclude that it is. Before November 1, 1990, the trial courts of this state were obligated to follow precedent established in a published decision of this Court unless there was contrary precedent by another panel of this Court or the case had been overruled by a decision of the

Supreme Court.[4] *In re Hague*, 412 Mich 532, 552-553; 315 NW2d 524 (1982); *People v Kroll*, 179 Mich App 423, 426; 446 NW2d 317 (1989).

Accordingly, not only was the trial court permitted to grant reconsideration on the basis of newly published precedent, it was obligated to do so. Indeed, little would be served by precluding the trial court from granting reconsideration and allowing the matter to proceed to trial and appeal, only to have the decision reversed in light of the prior decision of this Court. Thus, the grant of reconsideration is highly appropriate in those cases where a trial court's ruling is rendered erroneous by a newly published decision of this Court.

V

Plaintiff also argues that defendant's motion for reconsideration was not timely because it was not filed within seven days of the February 8, 1989, hearing on the motion to enter judgment or within seven days of the February 10, 1989, submission of an order by plaintiff pursuant to that hearing. Plaintiff's argument in this regard is without merit. Under MCR 2.119(F)(1), in effect at the time of the motion, a motion for reconsideration of a ruling on a motion had to be served not later than seven days after the entry of the order disposing of the motion.[5] The flaw in plaintiff's argument, however, is that no order was ever entered denying defendant's motion to enter judgment. Thus, the seven-day period for reconsideration never began

---

[4] On and after November 1, 1990, pursuant to Administrative Order No. 1990-6, this Court is no longer permitted to reach conflicting decisions, and opinions published on or after November 1, 1990, are binding on both this Court and the trial courts.

[5] A subsequent amendment of that court rule has increased the time for such motions to fourteen days.

to run, and, therefore, defendant's motion for reconsideration cannot be deemed untimely. If anything, it was premature. Second, it is at least arguable that even if an order had been entered and defendant's motion for reconsideration was untimely, defendant could have renewed its motion for entry of judgment before trial in light of the new precedent. See *Michigan Nat'l Bank v Mudgett,* 178 Mich App 677, 680-681; 444 NW2d 534 (1989). However, because the trial court never entered an order disposing of the motion in the first case, we need not determine whether it would have been appropriate for defendant to renew the motion after publication of *Henderson.*

VI

Plaintiff next complains that defendant raised frivolous objections to the order drafted by plaintiff denying defendant's motion for entry of judgment, which plaintiff presented under the so-called seven-day rule. MCR 2.602(B)(3). Plaintiff claims that defendant's objections to the proposed order were frivolous and were made solely for the purposes of buying time in order to obtain the publication of *Henderson* and, thereafter, bringing a timely motion for reconsideration in light of *Henderson.* Plaintiff further argues that we should impose a sanction on defendant for committing such abuse by regarding the subsequent motion for reconsideration as being untimely and reversing the grant of reconsideration. Plaintiff's position is again without merit.

First, it is difficult to ascertain from the record before us whether defendant's objections to plaintiff's proposed order were, in fact, frivolous. Plaintiff has failed to provide us with a transcript of the February 8, 1989, hearing at which the trial court apparently denied defendant's motion for entry of

judgment.[6] It is the appellant's duty to perfect the record on appeal, which includes providing transcripts of all proceedings in the matter. This Court limits its review to the record provided on appeal and will not consider any alleged evidence or testimony which is not supported by the record presented to the Court for review. *Band v Livonia Associates,* 176 Mich App 95, 103-104; 439 NW2d 285 (1989); *Nye v Gable, Nelson & Murphy,* 169 Mich App 411, 414, 416-417; 425 NW2d 797 (1988). Plaintiff's failure to procure the transcript of that hearing alone would be sufficient for us to decline to conclude that defendant's objections to plaintiff's proposed order were frivolous, inasmuch as we are unable to compare plaintiff's proposed order with the trial court's comments and ruling at the February 8 hearing.

Moreover, it is not at all clear to us that defendant's objections were misplaced in light of what little we do know of the February 8 hearing. At the April 12 hearing on defendant's motion for reconsideration, defense counsel characterized the trial court's February 8 ruling as meaning that the court was taking the matter under advisement and that it would reread *Henderson.* Plaintiff's counsel at that April 12 hearing characterized the trial court's ruling on February 8 as being a denial of defendant's motion, with the proviso that the court was going to reread *Henderson* and would

[6] Apparently such a transcript does, in fact, exist, inasmuch as plaintiff has appended the final page of that transcript to its brief on appeal and counsel at subsequent hearings made reference to having reviewed the transcript of the February 8 hearing. However, no transcript of that hearing is present in the lower court record before us, nor do the circuit court's docket entries reflect that such a transcript was ever filed. The docket entries merely reflect that a transcript of the hearing on April 12, which was defendant's motion for reconsideration, was filed with the court on July 11, 1989. It should be noted that that transcript also included proceedings of the May 31, 1989, hearing on plaintiff's motion for relief from judgment.

notify the parties by mail if it were changing its mind. At the April 12 hearing, as well as at the May 31 hearing on plaintiff's motion for relief from judgment, the trial court characterized its February 8 ruling as being a denial of defendant's motion, pending closer review of the *Henderson* opinion, with the court noting that no order had been entered. Moreover, the one paragraph of the transcript from the February 8 hearing which plaintiff appended to its brief indicates that the court stated that the logic offered in unpublished opinions can be noteworthy for a trial court, that it would reread the logic offered by the then-unpublished *Henderson* opinion, but that its impression was that there was not a meeting of the minds of the parties to accept mediation and that mediation was rejected. The trial court then indicated that it would set the matter for trial, but would reread the *Henderson* opinion and notify the parties by mail if the court changed its mind.

Plaintiff thereafter submitted a proposed order under the seven-day rule which would deny defendant's motion for entry of judgment. We note that plaintiff apparently submitted the order to opposing counsel on February 10, a mere two days after the hearing and the trial court's statement that it was going to reread *Henderson* and notify the parties by mail if it had changed its mind. Defendant's objections to the order stated that the court had ruled that it would not render its decision until after it more closely scrutinized the reasoning submitted by defendant. In light of the little evidence before us, we cannot say that it was frivolous for defendant to object to plaintiff's rather prompt submission of a proposed order in light of the trial court's own comments at the hearing that it was going to reread *Henderson* and

reconsider whether its first impression that defendant's motion should be denied was correct.

Accordingly, with these factors in mind, we cannot conclude that defendant acted improperly so as to require us to consider its motion for reconsideration to be untimely. Likewise, we decline to impose sanctions on defendant, as requested by plaintiff, for filing the objections to the proposed order.

### VII

Plaintiff next argues that we should decline from treating *Henderson* as controlling precedent in the case at bar because defendant failed to comply with the "spirit and intent" of the rules for requesting publication of unpublished decisions of this Court. Plaintiff's argument in this regard is wholly without merit. The vast majority of the opinions of this Court are initially released as unpublished opinions.[7] MCR 7.215(D) provides for publication of opinions initially released as unpublished opinions and provides in pertinent part as follows:

> (1) Any person may request publication of an opinion not designated for publication by
> (a) filing with the clerk 4 copies of a letter stating why the opinion should be published, and
> (b) mailing a copy to each party to the appeal not joining in the request.
> (2) Any party served with a copy of the request may file a response within 14 days in the same manner as provided in subrule (D)(1).

---

[7] For example, over ninety-three percent of the opinions released in the last three months of 1990 were released as unpublished opinions. A small number of those opinions may subsequently be published upon request.

In accordance with the provisions of this rule, defense counsel submitted a request for the publication of the *Henderson* decision on February 10, 1989. Apparently, defense counsel did not provide plaintiff with a copy of that letter, nor did defendant inform plaintiff that the request had been submitted. Plaintiff argues that it should have been provided with a copy of the request, stating that the court rule is unclear with regard to who is to be provided with a copy, and that, because of defendant's failure to so inform plaintiff, this Court should rescind publication of *Henderson* and restore its status as an unpublished opinion of this Court. We disagree.

First, contrary to plaintiff's position on appeal, the court rule is extremely clear on who is to receive a copy of a request for publication. Specifically, MCR 7.215(D)(1)(b) requires that a copy of the letter requesting publication be sent to each party to the appeal not joining in the request. The court rule does not require that a copy of the letter be sent to any other person or attorney. Accordingly, defendant was not obligated to provide plaintiff with a copy of the letter. While principles of ordinary courtesy and professional civility might dictate that defense counsel should have provided plaintiff with a copy of the letter, the court rules do not.

Plaintiff further argues that it was entitled to receive a copy of the letter so that it might exercise its right under MCR 7.215(D)(2) to file objections to the request for publication. However, that court rule does not extend any such right to plaintiff to file objections. Rather, the court rule by its strict terms only grants a right to a party to the appeal to file a response to a publication request. The court rule does not create a right for

other members of the bar to also file responses.[8] Accordingly, it cannot be concluded that plaintiff was deprived of a right which the court rule does not grant.[9] Furthermore, we would be loath to stretch the interpretation of the court rule to require that letters requesting publication be sent to other interested attorneys because it would be virtually impossible for this Court to enforce such a requirement inasmuch as we would have no way of determining which of the several thousand members of the State Bar might have an interest in the question. While defense counsel's letter to this Court requesting publication does disclose the fact that he was representing a party in the instant action and believed that the *Henderson* decision was relevant to the disposition of the case, we would have no way of ensuring that all such letters would disclose the existence of affected pending litigation. Rather, a letter might merely state that the attorney practices in the particular area of law affected by an unpublished opinion and, on the basis of his experience, believes that the unpublished decision addresses an issue of

[8] Of course, neither does the court rule strictly prohibit a person foreign to the appeal from filing a response to a publication request. Thus, it is certainly conceivable that the Clerk of the Court of Appeals would accept such a response for consideration by the Court. Since the issue is not before us, we express no opinion regarding whether our clerk is obligated to accept such filings, leaving that determination to such time as there may be an objection to the clerk's exercise of discretion in this matter.

[9] We should correct one misstatement of fact contained in plaintiff's brief that neither of the attorneys involved in the *Henderson* appeal ever filed a response to defendant's request for publication. While this Court's records reflect that that statement is technically correct in that no *response* was filed, it fails to disclose the fact that counsel for the defendant in *Henderson* had, on February 7, filed his own request for publication of the opinion. Accordingly, it is doubtful that Sprout Brothers' counsel would have filed a negative response to the publication request submitted three days later by defense counsel in the case at bar. Moreover, we should also note that there was a third request for publication, filed on February 3, by an attorney who is apparently foreign to both the case at bar and to the *Henderson* case.

interest to the bench and bar and that publication would advance the jurisprudence of the state. To require that copies of such letters be sent to parties or attorneys foreign to the appeal at issue would result in every publication decision by this Court being subject to collateral attack for failure to comply with such requirement. Such a requirement is, therefore, neither feasible nor desirable.

Furthermore, we note that plaintiff's claim that it did not receive notice of the publication request is not strictly accurate. Defendant disclosed the existence of a publication request in its motion for reconsideration, which was filed with the circuit court on March 8, 1989. This Court entered its order granting publication on March 19, 1989, with publication occurring the following day. Thus, there was at least some opportunity provided to plaintiff to file a response to the publication request. There is no indication that plaintiff made any attempt to file a response.

Even if we were to conclude that the equities of the situation lie with plaintiff and would be inclined to rescind publication, we are unaware of any authority for us to do so. The court rule does not itself provide a mechanism for rescinding publication, the time period for reconsideration by this Court has long since expired,[10] and, perhaps most importantly, we are not the panel of this Court which decided *Henderson,* and, therefore, it is doubtful that we possess the authority to overrule another panel of this Court on a publication determination. Even if not prohibited, we certainly would decline to do so. Indeed, for that matter, it would be inequitable to the other two attorneys who requested publication of *Henderson* to rescind publication of the opinion on the basis of factors

[10] MCR 7.215(H).

outside the knowledge or control of those attorneys.

Affirmed pursuant to Administrative Order No. 1990-6.